DOWNEY BRAND LLP
WILLIAM R. WARNE (Bar No. 141280)
APARNA RAJAGOPAL-DURBIN (Bar No. 218519)
555 Capitol Mall, Tenth Floor
Sacramento, CA  95814-4686
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
adurbin@downeybrand.com

Attorneys for Movant
ANONYMOUS POSTER ON YAHOO!, a/k/a
"FREE3WARREN"

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **IN RE:**<br><br>**ESA ENVIRONMENTAL SPECIALISTS, INC.,**<br><br>Debtor | Case No.  3:08-mc-80115<br><br>U.S. Bankruptcy Court (W.D.N.C.)<br>Case No. 07-31532<br><br>**SUPPLEMENTAL DECLARATION OF APARNA RAJAGOPAL-DURBIN IN SUPPORT OF MOTION OF ANONYMOUS POSTER a/k/a "FREE3WARREN" FOR FEES & COSTS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:        July 25, 2008<br>Time:        9:00 a.m.<br>Location.:   Courtroom 10, 19th Floor<br>Judge:       Hon. Susan Illston |

I, Aparna Rajagopal-Durbin, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and am counsel

at  Downey Brand LLP, attorneys of record for ANONYMOUS POSTER ON YAHOO!, a/k/a

"FREE3WARREN" (hereinafter "Free3warren") in this action.  I have personal knowledge of the

facts set forth herein, except to the extent they are stated on information and belief, and, if called

to testify, I could and would testify competently to the contents hereof.

2.      On June 18, my client informed me that he/she had received another subpoena in

1

1  which Prospect Capital Corporation ("Prospect") sought his/her identity.  Prospect issued the

2  subpoena out of the U.S. District Court for the Eastern District of New York and directed the

3  subpoena to my client's cable service provider, Cablevision.  I will hereinafter refer to this

4  subpoena as the "New York subpoena," in contrast to the subpoena at issue in the above-

5  captioned matter, which I will refer to as the "California subpoena."

6          3.      Shortly thereafter, my client obtained separate counsel – Lance Koonce of the

7  firm of Davis Wright Tremaine LLP in New York, New York – to represent him/her in moving

8  to quash the New York subpoena.  On July 1, Mr. Koonce filed a motion to quash the New York

9  subpoena and to recover fees and costs incurred by our client in connection with that subpoena.

10 Attached hereto as Exhibit A are true and correct copies of the file-stamped motion and

11 supporting declaration of Mr. Koonce.  In that motion, and based on consultations with me and

12 our client, Mr. Koonce did not refer to the California subpoena, as it was not apparent at the time

13 that Prospect knew that our clients were the same person and we did not want to take any actions

14 that would jeopardize our client's anonymity (this would only undermine our efforts.)

15         4.      Two days later, on July 3, I expected to receive an opposition from Prospect in the

16 California action.  When Prospect failed to file its opposition, we surmised that Prospect perhaps

17 did not intend to file oppositions to either motion.  So we were surprised when, on July 9,

18 Prospect filed a lengthy opposition to the New York motion, with several voluminous exhibits.

19 Attached hereto as Exhibit B are true and correct copies of Prospect's file-stamped opposition

20 brief filed in New York, as well as the supporting declaration of Prospect's counsel Christopher

21 Schueller.

22         5.      Mr. Koonce filed a reply brief in support of our client's motion in New York on

23 July 11.  Because Prospect's New York opposition made it clear that Prospect had already drawn

24 a connection between my client and Mr. Koonce's client, we decided to reveal the existence of

25 the California motion in the New York Action, and vice versa.  Our client also made a John Doe

26 Declaration attesting that he/she has no connection to ESA, among other facts.  Attached hereto

27 as Exhibit C are true and correct copies of Prospect's New York reply brief, along with the

28 supporting anonymous declaration of our client.

2

1

2

3   I declare under the laws of the State of California that the foregoing is true and correct.

4   Executed this 15th day of July, 2008 in Sacramento, California.

5

6

7                                              /s/ Aparna Rajagopal-Durbin
                                        APARNA RAJAGOPAL-DURBIN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL DURBIN DECLARATION IN SUPPORT OF MOTION FOR FEES & COSTS

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    JUL 01 2008    ★

BROOKLYN OFFICE

DAVIS WRIGHT TREMAINE LLP
  By:    Lacy H. Koonce, III (LK-8784)
1633 Broadway, 27th Floor
New York, New York 10019
(212) 489-8230
Attorneys for Anonymous Movant
  John Doe

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

IN RE RULE 45 SUBPOENA ISSUED TO      :
CABLEVISION SYSTEMS CORPORATION       :
REGARDING IP ADDRESS 69.120.35.31     :
                                       :
--------------------------------------------------------------x

MISC 08 347

_ Civ. ___ ROSS, J.

**MEMORANDUM OF LAW IN SUPPORT OF JOHN DOE'S CONSOLIDATED (1) MOTION TO QUASH SUBPOENA DIRECTED TO CABLEVISION SYSTEMS CORPORATION; (2) MOTION FOR ATTORNEY'S FEES; AND (3) MOTION TO PROCEED ANONYMOUSLY**

Non-party movant John Doe[1] respectfully submits this memorandum of law in support of his consolidated (1) motion filed pursuant to Fed. R. Civ. P. 45(c)(3) to quash the subpoena issued on June 6, 2008, by Prospect Capital Corporation ("Prospect") to Cablevision Systems Corporation ("Cablevision") in connection with *In re ESA Environmental Specialists, Inc.*, a bankruptcy action (docket # 07-31532) pending in the United States District Court for the Western District of North Carolina; (2) motion for attorney's fees pursuant to Fed. R. Civ. P. 45(c)(1); and (3) motion to proceed anonymously as a John Doe.

---

[1] For purposes of this motion, John Doe assumes an anonymous male identity.

# I. PRELIMINARY STATEMENT

John Doe is an Internet user whose computer is associated with the Internet Protocol

("IP") address 69.120.35.31.[2]  Doe is a subscriber to Internet services provided by subpoenaed

party Cablevision Systems Corporation.  By seeking to reveal Doe's identity, the subpoena at

issue, if complied with, will deprive John Doe of the right to engage in a variety of expressive

activities, all of which are protected by multiple statutory and constitutional provisions, including

the First Amendment and Section 631(c) of the Communications Act (47 U.S.C. § 551(c)).[3]

Because the subpoena would eviscerate John Doe's right to speak anonymously, to receive

information and to engage in other expressive activities on the Internet – itself a global "forum

for individual expression," *Prometheus Radio Project v. FCC*, 373 F.3d 372, 439 (3d Cir. 2004)

(Scirica, J., concurring and dissenting in part) – and because the subpoena does not seek (insofar

as John Doe has been able to surmise from Prospect) any information materially relevant to a

core claim or defense in the pending North Carolina litigation, the subpoena should be quashed.

Moreover, because disclosure in this proceeding of John Doe's identity would deny him the very

anonymity and freedom from harassment he seeks to protect, his motion to proceed anonymously

likewise should be granted.  Finally, because Prospect failed "to take reasonable steps to avoid

imposing undue burden or expense" upon John Doe, Doe requests an award of attorney's fees

pursuant to Fed. R. Civ. P. 45(c)(1).

---

[2] An IP address, in simple terms, is a unique address assigned to a specific electronic device that is connected to the Internet.

[3] The Communications Act prohibits cable service providers, such as Cablevision, from releasing identifying information regarding their subscribers except in narrowly defined circumstances.  In terms of this subpoena, Cablevision is prohibited from releasing John Doe's identity without (1) giving Doe prior notice of the subpoena and (2) a court order requiring disclosure.  47 U.S.C. § 551(c).

## II. STATEMENT OF FACTS

On June 6, 2008, Prospect issued a subpoena in this Court for the name and address of the subscriber who accessed the Internet via Cablevision's service using the IP address 69.120.35.31 on March 14, 2008, at 11:50 a.m. Koonce Decl. Ex. A. John Doe, the subscriber whose computer is affiliated with that IP address, received notice of the subpoena from Cablevision on June 18, 2008. Koonce Decl. Ex. B. Cablevision has informed Doe that Cablevision will release the requested information if Doe does not take action to prevent its release on or before July 1, 2008. *Id.*

On June 23, Doe retained counsel, who contacted Prospect's counsel to make two requests: (1) a request for information about the basis for the subpoena; and (2) a short extension of time to respond to the subpoena. *See* Koonce Decl. Ex. C. Prospect's counsel refused both requests, other than informing Doe's counsel about the underlying bankruptcy action and stating vaguely that the subpoena was based on Prospect's belief that the IP address in question belonged to a user who had sent emails to participants in the bankruptcy litigation and had made unspecified "web postings." *Id.* When asked how Prospect acquired the IP address, counsel said he did not know and refused to explain in any more detail the basis for the subpoena unless Doe's counsel made a request for that information in writing. *Id.* Counsel indicated that the only urgency in the matter was an unspecified "statute of limitations issue." *Id.*

During the brief conversation with Doe's counsel, Prospect's counsel insisted that Prospect already knew the identity of the owner of the IP address in question.[4] *Id.* However, when Doe's counsel requested the presumptive owner's identity, Prospect's counsel refused to answer. *Id.* Instead, Prospect's counsel insisted that *Doe* provide information about his

---

[4] Of course, if Prospect knows the owner's identity, query why Prospect has not contacted the owner directly, rather than attempting to force Cablevision to answer the subpoena.

awareness of the parties in bankruptcy, Prospect and/or ESA Environmental Specialists, Inc.  *Id.*

Subsequently, in an effort to assess whether the parties could resolve matters short of

motion practice, Doe's counsel responded with a letter dated June 25, 2008 requesting more

information.  *Id.*  Such requested information included, *inter alia*, information regarding the

alleged emails originating from the IP address, information regarding the alleged web postings

made from the IP address, and information substantiating any claim Prospect might have that the

information sought is relevant to and needed for the underlying bankruptcy action.  *Id.*  Given the

time constraints imposed by Prospect, Doe's counsel requested a response by the next afternoon

(June 26).

Prospect answered this request by email.  Rather than respond to any of Doe's requests

and refusing to make any demonstration of relevance, counsel instead demanded again that Doe

confirm whether or not he had heard of Prospect and/or ESA prior to receiving notice of the

subpoena.  Koonce Decl. Ex. D.  If so, Prospect persisted in wanting to know Doe's identity.  *Id.*

In light of Prospect's refusal to even provide the barest of justifications for the subpoena, John

Doe was left with no choice but to file the present motion to quash.

### III.  APPLICABLE LEGAL STANDARDS

Rule 45 requires a district court to quash a subpoena where the subpoena will impose an

"undue burden" if enforced. Fed. R. Civ. P. 45(c)(1).  To determine whether a subpoena poses

an undue burden, courts balance "such factors as relevance, the need of the party for the

documents, the breadth of the document request, the time period covered by it, the particularity

with which the documents are described and the burden imposed." *Travelers Indem. Co. v.*

*Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (quoting *United States v. IBM*

*Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).  The decision whether to quash a subpoena is

committed to the discretion of the district court. *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir.

2003).  A movant other than the recipient of a subpoena, such as John Doe here, has standing to

move to quash the subpoena where he seeks to protect "personal rights," including rights

protected by the First Amendment.  *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990).

Where the identities of litigant subscribers to Internet services are sought to be disclosed

by civil litigant-opponents, courts in this Circuit have announced a multi-factor test for balancing

the litigants' interests in such disclosure against the First Amendment interests of the subscribers

in protecting their anonymity.  Such factors include (1) "a concrete showing of a prima facie

claim of actionable harm," (2) "specificity of the discovery request," (3) "the absence of

alternative means to obtain the subpoenaed information," (4) "a central need for the subpoenaed

information to advance the claim," and (5) "the party's expectation of privacy."  *Sony Music

Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004); *General Bd. of Global

Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, No. CV 06-3669, 2006

WL 3479332, at *4-*5 (E.D.N.Y. Nov. 30, 2006) (same, citing *Sony Music*).

Courts that have addressed the issue have found, however, that a higher showing is

required where a litigant seeks via subpoena to reveal the identity of a non-party Internet user.  In

such cases, the subpoenaing party must demonstrate that: (1) the subpoena seeking the

information was issued in good faith and not for any improper purpose, (2) the information

sought relates to a core claim or defense, (3) the identifying information is directly and

materially relevant to that claim or defense, and (4) information sufficient to establish or to

disprove that claim or defense is unavailable from any other source.  *Doe v. 2TheMart.com Inc.*,

140 F. Supp. 2d 1088, 1097 (W.D. Wash. 2001).

## IV.  ARGUMENT

**A.**    **The Subpoena Should Be Quashed Because Doe's Interest In Online Anonymity Far Exceeds Prospect's Interest In Doe's Identity.**

**1.**    **The Subpoena Seeks To Infringe John Doe's Protected Expressive Activities.**

John Doe's communications via the Internet, whether they be emails, web postings, or simple Internet browsing (or all of the above), are expressive activities protected for myriad reasons, and in myriad ways, by the First Amendment.[5]

First, and fundamentally, the Internet as a whole has been repeatedly recognized by the courts as a uniquely valuable forum for expression.  The Supreme Court has held that the protections of the First Amendment extend fully to the Internet, where, "[t]hrough the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox," and "[t]hrough the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer."  *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004) ("Courts have recognized the Internet as a valuable forum for robust exchange and debate."). And both Congress and the federal courts have recognized the importance of protecting the "unfettered and unregulated development of free speech on the Internet."  *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) (discussing 47 U.S.C. § 230).

Second, anonymous speech has long been protected as a crucial prerogative and right. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (overturning state statute prohibiting distribution of anonymous campaign literature on First Amendment grounds and observing that "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent"); *see also Lamont v.*

---

[5] The issuance and enforcement of a subpoena constitutes state action subject to the constraints imposed by the First Amendment.  *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d at 1092.

*Postmaster General*, 381 U.S. 301, 307 (1965) (striking down a federal statute requiring citizens wishing to receive communist literature to affirmatively identify themselves to the post office because the lack of anonymity would have a "deterrent effect" and chill First Amendment rights to receive expressive materials).   This right traces back to (and beyond) the birth of the republic, during which time anonymous pamphlets, circulars, newspaper columns and writings – including the Federalist Papers – provided essential contributions to the robust debate over the form the nation and its laws would take.   *See McIntyre*, 514 U.S. at 341-42; *see also Talley v. California*, 362 U.S. 60, 64 (1960) ("Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind.").

Given this firmly-rooted pamphleteering tradition in American discourse, courts have had no trouble recognizing the extension of this tradition to the medium of the Internet, where anonymous speech "facilitates the rich, diverse, and far ranging exchange of ideas" that characterizes the online experience.   *2TheMart.com*, 140 F. Supp. 2d at 1092.   Online, the "ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate."   *Columbia Ins. Co. v. Seescandy.Com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).   Accordingly, "[p]eople who have committed no wrongdoing should be free to participate in online forums without fear that their identity will be exposed under the authority of the court," and "the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded."   *2TheMart.com*, 140 F. Supp. 2d at 1092 (citing *Seescandy.Com*, 185 F.R.D. at 578), 1097; *id.* at 1093 ("The free exchange of ideas on the Internet is driven in large part by the ability of Internet users to communicate anonymously.").

Third, the First Amendment protects the right to distribute and the right to receive expressive materials – again, activities the Prospect subpoena apparently seeks to chill. *See Stanley v. Georgia,* 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas."); *Griswold v. Connecticut,* 381 U.S. 479, 482 (1965) (holding that freedom of speech and freedom of the press includes "the right to distribute, the right to receive, the right to read. . . and freedom of inquiry"); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 64-65 n.6 (1963) (holding that freedom of the press "embraces the circulation of books, as well as their publication"); *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) (holding that freedom of speech and press embraces and protects "the right to distribute literature" and "the right to receive it"). This right to receive and distribute information and ideas, "regardless of their social worth, is fundamental to our free society." *Stanley*, 394 U.S. at 564 (citing *Winters v. New York*, 333 U.S. 507, 510 (1948)).[6]

All of these protections would be eviscerated if the disclosure of Doe's identity were forced by the mere issuance of a – here, utterly bare – subpoena.

## 2.    Subpoenas Seeking To Deprive Internet Users Of Anonymity Are Subject To Heightened Judicial Scrutiny.

For all of these reasons, courts have uniformly concluded that the anonymity of Internet users receives heightened constitutional protection. *See, e.g., 2TheMart.com*, 140 F. Supp. 2d at 1093 (quashing subpoena and stating "discovery requests seeking to identify anonymous Internet

---

[6] Relatedly, in a decision in a long-running litigation over the Child Online Protection Act, the U.S. District Court for the Eastern District of Pennsylvania recently took note of Internet users' privacy concerns about (and constitutional concerns arising from) the release of web surfing data, stating as a finding of fact that "Web users are especially unlikely to provide a credit card or personal information to gain access to sensitive, personal, controversial, or stigmatized content on the Web. As a result of this desire to remain anonymous, many users who are not willing to access information non-anonymously will be deterred from accessing the desired information." *ACLU v. Gonzales*, 478 F. Supp. 2d 775, 805-06 (E.D. Pa. 2007); *see also id.* at 812 (forcing users who seek access to online content to reveal their identities online "will chill speech").

users must be subjected to careful scrutiny by the courts"); *Doe v. Cahill*, 884 A.2d 451 (Del.

2005) (setting forth a summary judgment test for a civil subpoena seeking identity of anonymous

internet poster/defendant); *Best Western Int'l, Inc. v. Doe*, No. CV-06-1537, 2006 WL 2091695

(D. Ariz. July 25, 2006) (civil subpoena seeking identity of anonymous internet posters cannot

go forward against anonymous defendants until plaintiff essentially proves he can survive

summary judgment); *Highfields Capital Mgmt. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005)

(quashing subpoena seeking identity of Internet poster/defendant); *Dendrite Int'l, Inc. v. Doe No.

3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) (denying plaintiff's motion to compel an

Internet service provider to reveal the identity of an anonymous internet speaker/defendant).

Most commonly, the question of online anonymity arises in the context of plaintiffs

seeking to identify anonymous <u>defendants</u>, and the courts have required a substantial showing –

most commonly one sufficient to defeat summary judgment – before allowing such defendants'

identities to be disclosed. In *Best Western*, for example, the district court required the would-be

plaintiff to survive summary judgment because the acts at issue – anonymous Internet postings

by the defendants on the Internet – were "purely expressive" and thus "entitled to substantial

First Amendment protection." *Best Western*, 2006 WL 2091695, at *4. Similarly, in *In re Does

1-10*, 242 S.W.3d 805 (Tex. App. 2007), the Texas Court of Appeals, after reviewing the

question at length, imposed a summary judgment standard on the ground that, *inter alia*, a

meaningful examination of evidence is necessary before a court can conclude "that a defendant's

constitutional rights must surrender to a plaintiff's discovery needs." *Id.* at 822 (quoting *Best

Western*, 2006 WL 2091695, at *5). Finally, in *Cahill*, the Delaware Supreme Court required a

would-be plaintiff to survive summary judgment in order to unmask an anonymous defendant,

observing that such a requirement would protect the defendant's rights without imposing a

significant burden on the plaintiff (who controlled or had access to much of the relevant information in suit, in any event). *Cahill*, 884 A.2d at 462-64.[7]

As noted, *supra*, other courts, including courts in this Circuit, have applied a multi-factor test when faced with requests to identify anonymous parties to the underlying litigation, assessing (1) "a concrete showing of a prima facie claim of actionable harm," (2) "specificity of the discovery request," (3) "the absence of alternative means to obtain the subpoenaed information," (4) "a central need for the subpoenaed information to advance the claim," and (5) "the party's expectation of privacy." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004); *General Bd. of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, No. CV 06-3669, 2006 WL 3479332, at *4-*5 (E.D.N.Y. Nov. 30, 2006) (same, citing *Sony Music*).

Courts addressing circumstances identical to the one presented here have recognized, however, an even more stringent standard should be applied in cases where a litigant seeks to reveal the identity of a *non-party* through the use of a Rule 45 subpoena.  As the district court in *2TheMart.com* observed, unlike a party's identity, the identity of a non-party witness generally is not crucial to the litigation.  140 F. Supp. 2d at 1095.  Accordingly, "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id.*  The court therefore

---

[7] The *Cahill* court also noted its concern that plaintiffs often resort to litigation for the unstated purpose of identifying their critics, decrying the "sue first, ask questions later" approach to filing civil complaints. *Cahill*, 884 A.2d at 457 (a lesser standard "will discourage debate on important issues of public concern as more and more anonymous posters censor their online statements in response to the likelihood of being unmasked").  When subpoenas are used to silence or to "out" litigants' critics, rather than for any legitimate litigation-related purpose, they give rise to the same concern.

adopted the following standard for assessing a civil subpoena seeking to identify an anonymous

non-party Internet user:

> In order to enforce a civil subpoena seeking the identifying information of a non-party individual who has communicated anonymously over the Internet, the party seeking the information must demonstrate, by a clear showing on the record, that four requirements are met:
>
>> (1) the subpoena seeking the information was issued in good faith and not for any improper purpose,
>>
>> (2) the information sought relates to a core claim or defense,
>>
>> (3) the identifying information is directly and materially relevant to that claim or defense, and
>>
>> (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*Id.* at 1097.[8] Such a heightened burden is necessary because "the First Amendment requires us

to be vigilant in making [these] judgments, to guard against undue hindrances to political

conversations and the exchange of ideas." *Id.* at 1095 (quoting *Buckley v. American*

*Constitutional Law Found.*, 525 U.S. 182, 192 (1999). At a minimum, this standard should set a

floor on the showing required of Prospect here.

### 3. Prospect Cannot Satisfy Any Rational Test For Justifying Disclosure Of John Doe's Identity.

Regardless of the test employed, Prospect has failed to justify, by any measure, its effort

to force Doe's identity into the open. In its perfunctory interactions with Doe's counsel,

Prospect has made no showing whatsoever that Doe's identity is at all relevant to the underlying

litigation in North Carolina – let alone a showing that Doe's identity relates to a "core claim or

---

[8] This standard, which refers generically to Internet "communications," applies to Doe's Internet activities on March 14, 2008, regardless of whether such activities included "web postings," emails, web surfing or all of the above. *Id.*; *see also McIntyre*, 514 U.S. at 357; *Stanley*, 394 U.S. at 564; *Griswold*, 381 U.S. at 482; *Bantam Books*, 372 U.S. at 64-65 n.6; *Martin*, 319 U.S. at 143.

defense" in that litigation or that "the identifying information is directly and materially relevant to that claim or defense." *See* Koonce Decl. Exs. C, D; *2TheMart.com*, 140 F. Supp. 2d at 1097; *Sony Music*, 326 F. Supp. 2d at 565 (requiring a "central need" for the information). Instead, Prospect has attempted to hide the ball, insisting that *Doe* provide information regarding the subpoena and its relevance to the underlying case.[9] Indeed, Prospect has failed to identify *any* purpose for issuing the subpoena, raising substantial questions about whether the subpoena was "issued in good faith and not for any improper purpose." Koonce Decl. Exs. C, D; *2TheMart.com*, 140 F. Supp. 2d at 1097. And, similarly, Prospect has made no indication of any efforts to obtain Doe's identity via other means, except to suggest that Prospect actually already knows who Doe is – a strange basis, indeed, for issuing a subpoena. *Id.*; *Sony Music*, 326 F. Supp. 2d at 565 (requiring a showing of "the absence of alternative means to obtain the subpoenaed information"). In short, Prospect has done nothing to justify its decision, has made no effort to seek for other means to pursue its aims without violating Doe's First Amendment rights, and has utterly failed to establish even the slightest hint of a connection between John Doe and the North Carolina bankruptcy litigation – let alone a connection warranting depriving Doe of his right to remain anonymous while using the Internet.[10] This is hardly the "exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights

---

[9] While the burden is Doe's to show an undue burden arising from the subpoena, where, as here, "relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 663 (D. Kan. 2003) ("Demonstrating relevance is the burden of the party seeking discovery.").

[10] Any disclosure of Doe's identity would, by definition, deprive him of his First Amendment right to communicate anonymously via the Internet, whether that communication is by distributing and receiving expressive content, by sending and receiving emails, or by making "web postings." *Best Western*, 2006 WL 2091695, at *4; Koonce Decl. Ex. C.

of the anonymous speaker." *2TheMart.com*, 140 F. Supp. 2d at 1095; *Sony Music*, 326 F. Supp. 2d at 565. The subpoena, therefore, should be quashed.[11]

**B.    Prospect Failed To Take Reasonable Steps To Avoid Imposing Undue Burdens And Expenses Upon John Doe, And Doe Is Therefore Entitled To An Award Of Attorney's Fees.**

Prospect's failure to provide even the slightest justification for the subpoena warrants an award of fees to John Doe. Fed. R. Civ. P. 45(c)(1) provides that, where an issuing party fails "to take reasonable steps to avoid imposing undue burden or expense" upon persons subject to a subpoena, the issuing court "must enforce" the duty to take such steps and must "impose an appropriate sanction," including, in the court's discretion, attorney's fees. *Id.*

Here, had Prospect made even the barest effort to demonstrate that the subpoena sought relevant information or was otherwise reasonable, perhaps John Doe's motion to quash could have been avoided. Prospect opted, however, to offer Doe nothing of substance and to force Doe to file this motion if he wished to preserve his constitutional rights. Indeed, if counsel's representation that Prospect does not even need the subpoena to be enforced in order to identify Doe in the first place is accurate, then the subpoena – and this motion – was a worthless exercise in futility. In such circumstances, Prospect cannot possibly be deemed to have taken "reasonable steps" to avoid unnecessary or undue burdens and expenses upon John Doe. Quite the opposite. Accordingly, Doe should be compensated for the attorney's fees expended in this matter.

**C.    John Doe Is Entitled To Proceed Anonymously.**

Finally, because the only means by which to preserve the rights he seeks to vindicate via his motion to quash is to file this motion without identifying himself by name, John Doe respectfully requests leave of this Court to proceed anonymously in this action. *See Best*

---

[11] Should Prospect, however belatedly, provide in opposition to Doe's present motions substantive information regarding its decision to issue the subpoena, Doe will respond to that information on reply.

*Western*, 2006 WL 2091695, at *5.

## V.  CONCLUSION

For the foregoing reasons, anonymous movant John Doe respectfully requests that the

Court (1) grant his motion to quash Prospect's subpoena, (2) issue an award of attorney's fees in

favor of Doe, (3) grant Doe leave to proceed anonymously, and (4) provide such further relief as

the Court may deem appropriate.


Dated: New York, New York
      July 1, 2008

                    Davis Wright Tremaine LLP


                    Lacy H. Koonce, III (LK-8784)

                    1633 Broadway, 27th Floor
                    New York, New York  10019
                    (212) 489-8230

                    Attorneys for Anonymous Movant John Doe

DAVIS WRIGHT TREMAINE LLP
  By:   Lacy H. Koonce, III (LK-8784)
1633 Broadway, 27th Floor
New York, New York 10019
(212) 489-8230
Attorney for Anonymous Movant
  John Doe

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
*    JUL 07 2008    *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
IN RE RULE 45 SUBPOENA ISSUED TO                            :
CABLEVISION SYSTEMS CORPORATION                             :
REGARDING IP ADDRESS 69.120.35.31                           :
                                                            :
                                                            :
------------------------------------------------------------x

MISC 08 347

__ Civ. ____ ROSS, J.

### DECLARATION OF LACY H. KOONCE, III
### IN SUPPORT OF JOHN DOE'S CONSOLIDATED (1) MOTION TO QUASH
### THE SUBPOENA ISSUED BY PROSPECT CAPITAL CORPORATION;
### (2) MOTION FOR ATTORNEY'S FEES; AND (3) MOTION FOR
### LEAVE TO PROCEED ANONYMOUSLY

**LACY H. KOONCE, III**, an attorney duly admitted to practice in the courts of New

York and before this Court, hereby declares:

1.    I am a member of the law firm of DAVIS WRIGHT TREMAINE LLP, counsel to

non-party anonymous movant John Doe.  I submit this Declaration in support of Doe's

consolidated (1) motion to quash the Subpoena, dated June 6, 2008, issued by Prospect Capital

Corporation (the "Subpoena"); (2) motion for attorney's fees; and (3) motion for leave to

proceed anonymously.

2.    Attached as Exhibit A to this declaration is a true and correct copy of the

Subpoena, as it was transmitted to Doe by Cablevision Systems Corporation.

3.     Attached as Exhibit B to this declaration is a true and correct copy of the notice sent by Cablevision Systems Corporation of the Subpoena, redacted to omit movant John Doe's name and address.

4.     Attached as Exhibit C to this declaration is a true and correct copy of a letter I sent to counsel for Prospect Capital Corporation on June 24, 2008.  This letter memorializes the substance of a telephone conversation I had with Prospect's counsel, Christopher Schueller, on June 23, 2008.

5.     Attached as Exhibit D to this declaration is a true and correct copy of the email response from Mr. Schueller to my letter of June 24, which response I received on June 26, 2008.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 1, 2008.


Lacy H. Koonce, III (LK-8784)

Exhibit A



June 17, 2008

*Via Federal Express*

     Re:    ESA Environmental Specialists Inc.,

Dear       :

        CSC Holdings, Inc. ("Cablevision") has been served the attached subpoena in the above-referenced matter. Said Subpoena directs Cablevision to produce documents in Cablevision's possession relating to certain subscriber information. This information may include a listing of name, address and home telephone number.

        In the event you wish to prevent such disclosure, kindly contact an attorney to represent your interests. Cablevision cannot represent your interests in this matter.

        <u>If Cablevision does not receive a court order from you or your attorney directing us to withhold such information by the end of business day on *Tuesday June 24, 2008,*</u> Cablevision will release such records to the attorney or law firm that served such Subpoena.

        Should you have any questions, you may contact me at (516) 803-2977.

                        Sincerely yours,

                        Patrice McCullough
                        Paralegal

cc.:   Karen Kontje Waller, Esquire
      Director of Corporate Compliance

Exhibit B

(11/91) Subpoena in a Case under the Bankruptcy Code

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

In re

ESA Environmental Specialists, Inc.,

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**

Chapter 7
Case No.: 07-31532
United States Bankruptcy Court
Western District of North Carolina

Debtor.

To: Custodian of Records
Cablevision Systems Corp.
1111 Stewart Avenue
Bethpage, NY 11714

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

**SEE ATTACHED DESCRIPTION**

| PLACE | DATE AND TIME |
|---|---|
| Buchanan Ingersoll & Rooney PC<br>1 Chase Manhattan Plaza, 35th Floor<br>New York, NY 10005-1417 | June 13, 2008<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any subpoenaed organization not a party to this proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE   June 6, 2008 |
|---|---|
| Counsel for Prospect Capital Corporation | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Christopher P. Schueller
Buchanan Ingersoll & Rooney PC
(Admitted Pro Hac Vice)
301 Grant Street, 20th Floor
One Oxford Centre
Pittsburgh, PA 15219
Counsel for Prospect Capital Corporation

## INSTRUCTIONS AND DEFINITIONS

A.      In responding to this document request, furnish all documents available, including those in the possession of your subsidiaries, affiliates, agents, employees and attorneys and not merely such documents as you may have within your immediate control.  If you are unable to respond in full to any particular document request after exercising due diligence to obtain all the documents requested, so state; furnish the documents that are available; and indicate in writing your inability to provide the rest of the documents that are responsive to the request, setting forth whatever information, knowledge or belief you have concerning the unavailable documents.

B.      To the extent that this request calls for what you believe to be documents subject to a claim of privilege, attorney's work product or material prepared for litigation:  respond to every part of this request that does not call for, in your view, privileged information or attorney's work product or material prepared for litigation; and with respect to each document you refuse to furnish (i) describe each such document, setting forth its type (e.g., letter or memorandum), general subject matter, date, page length (if a written document), author, addressee and any other recipient and, where not apparent, the relationship of the author, addressee and any other recipient to each other, and (ii) set forth the basis for your claim of privilege or attorney's work product or material prepared for litigation and the basis upon which you refuse to produce it.

C.      In the event that any document covered by this request has been lost, destroyed, or transferred to a third party over whom you claim you lack control, identify:  (i) the document by author, date, recipient, context and subject matter; (ii) the date and circumstances surrounding the loss, destruction, or transfer; (iii) the reason(s) for the loss, destruction, or transfer; (iv) the person responsible for the loss or destruction; (v) the person(s) or entity(ies) to whom the document was transferred; (vi) the document's present location; and (vii) the date and manner in which you can or may obtain each such document.

D.      "Identify" in the case of any document means either to produce the document or to state:  (a) its locations; (b) the location of all copies which are not identical duplicates of the original; (c) the name and title of all persons presently in charge of the custody and maintenance of the original and all non-identical copies; (d) the date of the original and all non-identical copies; (e) the author and signatories of the original and all non-identical copies; (f) its length; (g) the original document's contents and how each non-identical copy differs from the original; and (h) each person who received the original copy of the document.  If the document was, but no longer is, in your possession, custody or control, state or identify:  (a) what disposition was made of the document; (b) the date of any such disposition; and (c) each person that either authorized or has knowledge relating to such disposition.

E.      "Identify" in the case of a natural person means to state his or her:  (a) name; (b) title or position; (c) present or last known business address and telephone number; and (d) present or last known home address and telephone number.  If such personal is no longer employed by the person for whom he/she engaged in the activity that is the subject of the interrogatory, state the date on which he/she left the employ of the person and his/her title or position when he/she engaged in the activity which is the subject of the Discovery Request.

F.      "Identify" in the case of the non-natural person means to state:  (a) the full name of the person; (b) the address of its principal place of business; (c) the telephone number of its principal place of business; (d) the name of the title of each person who (i) is or was an officer, director, general partner, limited partner, member, or beneficiary of the person, or (ii) represented the person with respect to the subject matter of the Discovery Request; and (c) the relationship of the entity to the parties to this proceeding.

G.    "Identify" in the case of a communication means to state or identify: (a) the date, time and place of the communication; (b) the form of communication (such as memorandum, letter or conversation); (c) each person who has believed to have firsthand knowledge of the communication; (d) the substance of the communication; and (e) each document relating to the communication.

H.    "Person" means any natural person or any business, legal or governmental entity or association.

I.    This document request is a continuing one, and you shall produce, in the form of supplementary document productions, any document requested herein which is unavailable to you at the time of your response hereto, but which becomes available to you or your agents or representatives at a later date.

J.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

K.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

L.    The word "any" shall be construed to mean "any and all" where the effect of such construction is to broaden the scope of the document request in question.

M.    The singular shall include the plural, and the plural shall include the singular.

N.    In no instance shall the term "including" be construed to limit the scope of any document request.

O.      The term "communication" means the transmittal of information (in the form of facts, ideas or otherwise).

P.      The term "concerning" means relating to, referring to, describing, evidencing, constituting, containing, comprising, stating, setting forth, recording, including, discussing, reflecting, interpreting, or identifying.

Q.      "Optionline User" means any person or agency or entity who or that has the IP Address 69.120.35.31 and who uses Optionline.net as an internet service provider.

R.      "IP Address" means the internet provider address.

S.      "Bankruptcy Case" means the above-captioned Bankruptcy Case.

## DOCUMENT REQUESTS

A document which contains the name and address of the Optionline User for March 14, 2008 at 11:50 a.m.

Exhibit C

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

LANCE KOONCE
DIRECT (212) 603-6467
lancekoonce@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

June 24, 2008

**Via Facsimile and Email**

Christopher P. Schueller
Buchanan Ingersoll & Rooney PC
301 Grant Street, 20th Floor
One Oxford Center
Philadelphia, PA 15219

> Re:    *In re ESA Environmental Specialists, Inc./EDNY Subpoena*

Dear Mr. Schueller:

I write as counsel for the party affiliated with IP address 69.120.35.31 regarding the subpoena issued by Prospect Capital Corporation to Cablevision Systems Corp. in connection with *In re ESA Environmental Specialists, Inc.*, a bankruptcy action (docket # 07-31532) pending in the United States District Court for the Western District of North Carolina.

As I explained to you when we spoke yesterday, our client received notice of the subpoena on Thursday afternoon, June 18. My firm was retained yesterday afternoon, June 23. I called you yesterday to make two requests: (1) a request for information about the basis for the subpoena; and (2) a request for a short extension of time for compliance, as a professional courtesy.

You were unable or unwilling to accede to either requests, other than providing limited information about the underlying bankruptcy action and stating vaguely that the subpoena is based on a belief by your client that the IP address in question belongs to a user who has sent emails to participants in the bankruptcy litigation, and has made unspecified web postings. You could not explain in any more detail the basis for the subpoena, and insisted that we make any further requests in writing. You refused to provide an extension of time, although you conceded that the only urgency in the matter was a "statute of limitations issue", again without elaborating. You also insisted that your client already knows who the owner of the IP address is.

In light of the above, we ask that you provide the following information:

Christopher P. Schueller, Esq.
June 24, 2008                                                              

 (1) The dates, times, sender(s), recipient(s), and subject matter of the emails that your client believes are affiliated with the IP address and material to the underlying bankruptcy action, and the manner in which your client acquired the IP address associated with those emails;

 (2) The dates, times, websites, subject matter and screen name of the poster(s) for the web postings your client believes are affiliated with the IP address and material to the underlying bankruptcy action, and the manner in which your client acquired the IP address associated with those postings;

 (3) The significance of the date and time March 14, 2008 at 11:50 a.m. as noted in the subpoena;

 (4) The specific information that your client believes the party associated with the IP address possesses that is relevant in the underlying bankruptcy action; and

 (5) A description of any other action that your client has undertaken (or that you or others have taken on behalf of your client) to locate the information it believes the party associated with the IP address possesses.

 Please provide the above information no later than the close of business Thursday, June 26.

       Very truly yours,

       Lance Koonce

LHK/lp

Exhibit D

From: Schueller, Christopher [mailto:christopher.schueller@bipc.com]
Sent: Thursday, June 26, 2008 10:16 PM
To: Perry, Loretta
Cc: Koonce, Lance
Subject: RE: Sent on behalf of Lance Koonce, Esq.

Lance,

I received your letter dated 6/26.    You have for the most part
mischaracterized the substance of my comments.  In particular, as I told you,
the most efficient way to deal with this situation is for your client to
confirm whether or not your client ever heard of Prospect or ESA before
receiving the subpoena.  If your client has never heard of Prospect or ESA,
then we can work on an arrangement to verify that information by affidavit
without the disclosure of your client's identity.  If your client had
previously heard of Prospect or ESA, then we want to know his/her identity.

Chris


-----Original Message-----
From: Perry, Loretta [mailto:lorettaperry@dwt.com]
Sent: Tuesday, June 24, 2008 3:23 PM
To: Schueller, Christopher
Cc: Koonce, Lance
Subject: Re: Sent on behalf of Lance Koonce, Esq.


Please see the attached letter from Mr. Koonce re: In Re ESA
Environmental Specialists, Inc/EDNY Subpoena.

Thank You.


Loretta Perry | Davis Wright Tremaine LLP Legal Secretary for Marcia B.
Paul, Lance Koonce, Christopher Robinson and Monica Pa
1633 Broadway, 27th Floor | New York, NY 10019
Tel: (212) 603-6473 | Fax: (212) 489-8340
Email: lorettaperry@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco
| Seattle | Shanghai | Washington, D.C.

-----Original Message-----
From: scan@dwt.com [mailto:scan@dwt.com]
Sent: Tuesday, June 24, 2008 3:16 PM
To: Perry, Loretta
Subject:

Please open the attached document.  It was scanned and sent to you using
a Xerox WorkCentre Pro.

Sent by: Guest [scan@dwt.com]
Number of Images: 2
Attachment File Type: PDF

WorkCentre Pro Location: machine location not set Device Name: NYC_73

For more information on Xerox products and solutions, please visit
http://www.xerox.com

TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication
(including attachments) was not intended or written to be used, and it cannot
be used, by you for the purpose of (1) avoiding any penalty that may be
imposed by the Internal Revenue Service or (2) promoting, marketing or
recommending to another party any transaction or matter addressed herein. If
you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and
protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.

BUCHANAN INGERSOLL & ROONEY PC
Christopher P. Schueller (CS 9525)
301 Grant Street, 20th Floor
One Oxford Centre
Pittsburgh, PA 15219
(412) 562-8800
Attorneys for Respondent Prospect Capital Corporation

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                               :
IN RE RULE 45 SUBPOENA ISSUED TO   :
CABLEVISION SYSTEMS CORPORATION   :
REGARDING IP ADDRESS 69.120.35.31   :
                               :
-------------------------------------------------------------x

Misc. 08-347

## PROSPECT CAPITAL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENA AND FOR OTHER RELIEF

Respondent Prospect Capital Corporation ("Prospect") respectfully submits this memorandum of law in opposition to the consolidated motion ("Motion") by John Doe (1) to quash Prospect's subpoena issued on June 6, 2008 to Cablevision Systems Corporation ("Cablevision") in connection with the bankruptcy case of ESA Environmental Specialists, Inc. ("ESA"), case number 07-31532 ("Bankruptcy Case") pending in the United States Bankruptcy Court for the Western District of North Carolina ("Bankruptcy Court"), (2) for attorney's fees, and (3) to proceed anonymously as John Doe.

### I.    PRELIMINARY STATEMENT

Prospect is in an important legal battle to mitigate its losses on a series of loans it made to ESA. The only assets remaining for Prospect to recover in the Bankruptcy Case are millions of dollars in litigation claims which Prospect succeeded to and purchased in the Bankruptcy Case. Many of these claims only exist if there is a pending bankruptcy case. However, Prospect cannot pursue these litigation claims unless Prospect (i) secures a general release from a Chapter 7

bankruptcy trustee, (ii) agrees to share litigation proceeds with the bankruptcy estate for the benefit of all creditors, and (iii) secures Bankruptcy Court approval of the release and agreement before the litigation is commenced.

Some of the potential defendants in the anticipated litigation are former officers of ESA. These ESA officers have embarked on a smear campaign with the trustee in an effort to persuade the trustee to sue Prospect rather than give Prospect a release and litigation agreement. The potential defendants have claimed to the trustee that Prospect (i) is using the litigation to deflect attention from its own wrongdoing, and (ii) has significant lender liability exposure. These ESA officers will undoubtedly make the same arguments to the Bankruptcy Court if the trustee and Prospect ever submit a proposed release and litigation agreement to the Bankruptcy Court for approval.

The "he said, she said" battle for the allegiance of the trustee and the Bankruptcy Court will likely be resolved based on the credibility of Prospect versus the credibility of the former ESA officers. Because of the millions of dollars at stake for Prospect and all creditors, Prospect understandably wants to prove to the trustee and Bankruptcy Court that the allegations of the former ESA officers lack credibility. To that end, Prospect has a reasonable belief that one or more of its current or former disgruntled employees, officers or directors, despite their fiduciary obligations to Prospect, have shared confidential and proprietary "information" with the ESA officers, and that these ESA officers are using this "information" to give credibility to their attack of Prospect before the trustee. Because the source for this venom is a disgruntled employee, officer or director, Prospect argues the "information" is tainted, biased and lacking in credibility.

The problem Prospect faces is that Prospect does not know the identity of the disgruntled employee, officer or director breaching fiduciary obligations. That person (or persons) has only

surfaced by posting messages on a Yahoo finance web site, and attempting to traffic in Prospect's confidential and proprietary information on Yahoo through a user account with Cablevision. Hence, Prospect served subpoenas on both Yahoo and Cablevision to uncover the Prospect "mole," and prove Prospect's belief that this person in violation of fiduciary duties to Prospect, is supplying inside "information" to ESA officers as part of a vendetta against Prospect and its people.

The results of the subpoenas reveal a web of deceit with the movant John Doe right in the thick of it. Using his Cablevision account, John Doe attempted to access what he believed to be confidential and proprietary information of Prospect. Prospect seeks the identity of John Doe to find out if he is a Prospect mole and is working with the ESA officers in the Bankruptcy Case. John Doe does not want his true identity to be disclosed because (he claims) his First Amendment rights will be violated. John Doe's arguments fail however because (i) John Doe has no standing to object to a subpoena which was served on a third-party, and (ii) any right John Doe has to object to a subpoena has been waived as untimely. In addition, the balance of harms weighs decidedly in favor of Prospect. Prospect has millions of dollars in litigation claims at risk. John Doe has razor thin or non-existent First Amendment rights because the "speech" at issue is commercial speech, and the central act of John Doe here which triggered the subpoena was John Doe's efforts to download insider information about Prospect from the internet. Under these circumstances, the Motion should be denied and John Doe's identity, as an insider or otherwise, revealed.

## II.    BACKGROUND

### 1.    ESA Loan

On April 11, 2007, Prospect funded a $12,200,000 loan to ESA.  (Ex. CC)[1]  Within days after the closing, ESA reported a liquidity crisis to Prospect.  Prospect was stunned and puzzled as to how a liquidity crisis could arise so soon after the closing date.  (Ex. CC)  To address the liquidity crisis, Prospect amended its loan documents two times to loan ESA an additional $625,000 on May 5, 2007 and $950,000 on May 17, 2007.  (Ex. CC)

After May 17, 2007, ESA continued to ask Prospect for additional money and claimed it could not continue operating without an immediate infusion of cash.  (Ex. CC)  Prospect refused additional funding and began an investigation process which revealed (i) substantial fraud perpetuated by Debtor's management both before and after the April 11, 2007 financing which covered up the liquidity crisis, (ii) over $1 million in closing proceeds were missing and apparently diverted, and (iii) ESA's two highest corporate officers paid themselves almost $500,000 in June of 2007 in the midst of ESA's liquidity crisis.  (Ex. CC)

On August 1, 2007, ESA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  (Ex. CC)  After the filing, ESA and Prospect negotiated the form of an Asset Purchase Agreement for the sale of substantially all of ESA's assets to Prospect or its designee.  (Ex. B)  The three most significant assets were (i) real estate owned by ESA, (ii) a subsidiary owned by ESA which was in the midst of its own liquidity crisis, and (iii) litigation rights of ESA.  (Ex. B)  ESA was burning cash at a rapid pace, so the going concern value of ESA was distressed and in need of a turnaround.  (Ex. CC)  Negotiations

---

[1] References to "Dec." are to the Declaration of Christopher P. Schueller dated July 9, 2008, and "Ex" are the exhibits attached thereto.

culminated on August 24, 2007 with the filing of an Emergency Joint Motion filed by Prospect and the Debtor for an order approving the asset sale.  (Ex. A)

The Court approved the sale procedures on August 31, 2007 and scheduled a sale hearing for September 20, 2007.  (Ex. A)  On September 17, 2007, Prospect identified its designee as Integrated Contract Services, Inc. ("Integrated").  (Ex. DD)  On September 28, 2007, the Court entered an order approving the sale of assets to Integrated.  (Ex. B)  The assets included all litigation rights of ESA ("Litigation Rights"), including without limitation, the right to pursue all preference and fraudulent conveyance claims ("Chapter 5 Claims").  (Ex. B)  A closing on the sale took place in early October of 2007.  (Ex. DD)  After the closing, Prospect became the 49% owner of Integrated, and the senior secured lender of Integrated.  (Ex. DD)  Integrated defaulted on its loan with Prospect and ceased operations in December of 2007.  Integrated then assigned all the Litigation Rights back to Prospect.  (Ex. DD)  In the end, recovery on the Litigation Rights has become a key to Prospect mitigating its losses.

### 2.    Litigation in the Bankruptcy Case

On February 6, 2008, Prospect moved to convert the ESA Bankruptcy Case to a Chapter 7 case so that Prospect could pursue the Litigation Claims in bankruptcy.  (Ex. E)  These include claims against the former directors and officers of ESA for wrongdoing ("D&O Claims"), for which there is $5 million in insurance coverage.  (Ex. E)  There are another $2 million to $3 million in Chapter 5 Claims.  The Bankruptcy Case was converted to a Chapter 7 case by order dated February 27, 2008.  (Ex. F)

Conversion was critical because, without it, many of the litigation claims would have been lost, including the Chapter 5 claims which only exist if there is a pending Bankruptcy Case.  In re The V Companies and V-S Architects, Inc., 274 B.R. 721, 740 (Bankr. N.D. Ohio 2002) (conversion warranted to permit a trustee to continue adversary proceeding); In re Citi-Toledo

Partners, 170 B.R. 602, 609 (Bankr. N.D. Ohio 1994) (risk of losing preference claims warrants in favor of conversion); In re Minnesota Alpha Foundation, 122 B.R. 89, 95 (Bankr. D. Minn. 1990) (conversion granted where dismissal would result in loss of meritorious causes of action).

However, a Court will dismiss a Chapter 7 case if there will be no benefit to the bankruptcy estate, viz, a benefit to *all* creditors, and not just a secured creditor. Congress Credit Corp. v. AJC Int'l, 186 B.R. 555, 559 (D.P.R.1995)(Chapter 7 trustee should not act as a mere conduit for the benefit of secured creditors only.); Wendell Watson v. The Management Network Group, Inc.(In re Nettle Corporation), 1995 WL 736463 (Bankr. D.C. 2006)(Trustee does not have a duty to manage assets, which have no value to the estate, for the benefit of secured creditors); Barber v. McCord Auto Supply, Inc. (In re Pearson Industries, Inc.), 178 B.R. 753, 761(Bankr.C.D.Ill.1995) (The trustee's major goal is to try to produce an estate for the debtor's unsecured creditors and should not act as a mere conduit for the benefit of secured creditors only.)

Moreover, Prospect must share Chapter 5 recoveries with other creditors who have standing to pursue those claims. Section 544 of the Bankruptcy Code expressly authorizes trustees and debtors to avoid various transactions including preferences and fraudulent transfers. 11 U.S.C. § 544. Avoidance powers also may be assigned to someone other than a debtor or trustee pursuant to a confirmed plan of reorganization under 11 U.S.C. § 1123(b)(3)(B). Avoidances are transferable outside of a plan of reorganization provided (i) that the creditor is pursuing interests common to all creditors and (ii) the exercise of the powers will benefit all creditors. In re P.R.T.C., Inc., 177 F.3d 774 (9th Cir. 1999) (approving transfer of avoidance powers where creditors will receive 50% of the proceeds); Briggs v. Kent (In re Professional Inv. Properties of Am.), 955 F.2d 623, 625 (9th Cir. 1992) (permitting assignment of avoidance

powers to creditor outside of a reorganization plan); <u>In re Chapman Lumber Co., Inc.</u>, 2006 WL 3861107 (Bankr. N.D. Iowa 2006) (creditor's standing to pursue avoidance actions upheld where Court approved such transfer upon notice to all creditors); <u>In re Huntsville Small Engines, Inc.</u>, 228 B.R. 9 (Bankr. N.D. Ala 1998) (no standing where no distribution to unsecured creditors will be made); <u>In re Burlington Motor Holdings, Inc.</u>, 231 B.R. 874 (Bankr. D. Del. 1999) (successor corporation lacked standing under Section 550(a) of the Bankruptcy Code to recover transferred property where it was pursuing claims solely for its own benefit).

On February 27, 2008, the Bankruptcy Court appointed Stanley M. Campbell as the Chapter 7 Trustee over ESA ("Trustee").  (Ex. F)  Prospect immediately opened negotiations with the Trustee to allocate litigation responsibilities and proceeds to benefit both Prospect and ESA's bankruptcy estate.  (Dec., ¶ 29-33)  As a condition to any deal, Prospect required the Trustee to release Prospect on any potential lender liability claims.  (Dec., ¶ 29-33)

The Trustee took the position that, not unusual, he needed to investigate possible lender liability claims against Prospect before agreeing to any terms with Prospect.  (Dec., ¶ 29-33)  As part of his investigation, the Trustee interviewed the former directors and officers of ESA.  The Trustee has disclosed to Prospect that the former officers and directors of ESA have accused Prospect of (i) fraud, (ii) exercising control over ESA, and (iii) lacking competence in its underwriting.  (Dec., ¶ 29-33)  The former officers have also attempted to assassinate the good character of Prospect and its officers by alleging that Prospect and its officers lied to the Bankruptcy Court and are known to have committed many other acts of fraud in transactions other than ESA.  (Dec., ¶ 29-33)  The former ESA officers claim that Prospect's D&O and fraud claims are an effort to deflect attention from Prospect's wrongdoing with ESA.  (Dec., ¶ 29-33)  Counsel for one of the ESA officers who filed a personal bankruptcy case has done substantial

research on lender liability claims against Prospect and lobbied the Trustee to assert these claims. (Ex. U)

To date, the Trustee has still not executed an agreement with Prospect concerning the ESA litigation, through the trustee says he will do so. (Dec., ¶ 29-33) Any such agreement must be approved by the Bankruptcy Court to be binding. (Dec., ¶ 29-33) The Trustee and Prospect have exchanged comments on a proposed agreement. (Dec., ¶ 29-33)

The actions of the former ESA officers and their statements to the Trustee are a substantial litigation risk to Prospect. The former directors and officers may persuade the Trustee to (i) forgo the D&O claims; (ii) refuse to enter into a litigation agreement with Prospect; or (iii) pursue lender liability claims against Prospect. If there is no litigation agreement with the Trustee, the Bankruptcy Case may be dismissed and millions of dollars in Chapter 5 Claims, which can only be brought in a bankruptcy case, will be lost. Moreover, the Trustee has a strong argument that any insured versus insured coverage exception in the D&O policy does not apply to the Trustee. See E.q. Reliance Ins. Co. of Illinois v. Weis, 148 B.R. 575 (E.D.Mo. 1992), aff'd 5 F.3d 532 (8th Cir. 1993). As a result, if the Trustee does not participate in the D&O Claims, D&O coverage could be lost. Even if the Trustee agrees on terms with Prospect, the former officers of ESA will undoubtedly oppose any motion in the Bankruptcy Court for approval of an agreement between the Trustee and Prospect.

The bottom line is that for Prospect to keep the Bankruptcy Case alive to preserve the Chapter 5 Claims and put in the strongest coverage case for the D&O Claims, both the Trustee and the Bankruptcy Court need to conclude that a release of lender liability claims against Prospect is proper, and that the Chapter 5 Claims and D&O Claims are valid and worth pursuing

before the claims are even filed.  If the Trustee or the Court concludes that Prospect engaged in wrongdoing, Prospect's multi-million dollar litigation rights will be lost.

The credibility of the allegations flying back and forth between Prospect and the former ESA officers will be examined carefully by the Trustee and the Bankruptcy Court.  Credibility will likely be the deciding factor in the "he said, she said" battle between Prospect and the former ESA officers.

### 3.      Prospect Hires a Private Investigator

After the Bankruptcy Case was converted to Chapter 7, Prospect hired a private investigator to complete a forensic examination of ESA and interview witnesses.  (Dec.¶ 34) The purpose of the investigation was to identify all relevant facts for potential litigation claims in the Chapter 7 bankruptcy case, including the D&O Claims.  (Dec.¶ 34)  The investigator completed this investigation and uncovered new details of the fraud by ESA.  (Dec.¶ 34)  These include (i) the creation of $1,203,557.43 in fictitious invoices in ESA's accounts receivable aging schedule; (ii) removal of over $1.6 million in contractor payables from the aging report; (iii) inflation of 2006 EBITDA by over $3 million; and (iv) the creation of fictitious customer accounts and projects.  (Dec.¶ 34)  Hence, Prospect and ESA have strong D&O Claims.  The former officers of ESA refused to be interviewed by Prospect's private investigator.  (Dec.¶ 34)

### 4.      Free3warren

Prospect is a publicly-traded company.  On or about November 28, 2006, a party with the user name "Free3warren" began posting messages on the Yahoo finance website which were highly critical of Prospect and its Chief Executive Officer John Barry ("Mr. Barry").  (Ex. M) Prospect noticed that Free3warren was actually disclosing information that could only be in the possession of an insider.  (Ex. M)  Free3warren periodically made comments which reflected an insider's understanding of how, *inter alia*, Prospect's Board of Directors operates, how Prospect's

proxy process works, how Prospect makes decisions on investments, Prospect's approach with investment bankers, Prospect's approach with individual employees and Prospect's agreements with subadvisors.  (Ex. M)  Prospect concluded that Free3warren must be a current or former employee, officer or director of Prospect.

Free3warren posted on the Prospect Yahoo page over 506 times between December of 2006 and April of 2008.  (Ex. BB)  Free3warren posted 36 messages on ESA.  (Ex. G)  On the site, Free3warren appears to be chatting with other Yahoo users about Prospect.  (Ex. M-T) When it became public that the ESA loan was in distress, Free3warren was critical of Prospect's handling of ESA and tried to generate further criticism from other Yahoo users concerning ESA. (Ex. G)

Free3warren is no innocent investor.  He has a pathological obsession with John Barry and Prospect.  His 506 messages on Yahoo about Prospect and John Barry took place in little over a year.  Many of these messages are detailed and required considerable time and effort. One post by Free3warren entitled "A Story" (page one of Ex. Q) is a good example:

> A Story
>
> In the spring of 2004, two failed venture capitalists, John Barry and Grier Eliasek, gave up their goal of raising money to fund their proposed limited partnership.  The simple problem was that after every potential investor did their due diligence on John, they ran away as fast as they could…

(Ex. Q)  The lengthy post continues with a history of the formation of Prospect, and private deals between Mr. Barry and the President of Prospect Grier Eliasek, and concludes:

> I've talked to a number of people who had involvement with Barry over the years, and the common theme is always, take my advice and don't get involved with him!

(Ex. Q)  This is not about business with Free3warren.  It is personal.

Between December of 2007 and February of 2008, Prospect observed  unusual activity on the Yahoo finance page.  A flurry of new users appeared and made numerous attacks on Prospect

and Mr. Barry concerning ESA similar to those attacks which had previously been made by Free3warren. (Ex. G and Ex. M-T)

Free3warren encouraged other users on Yahoo to engage in negative conversations concerning Prospect and Mr. Barry. (Ex. K) (ephfields on 12/5/07) Some of the attacks include allegations that (i) Mr. Barry "bullied" employees of Prospect to issue the ESA loan without proper due diligence (Ex. K) (gander6684 on 2/4/08), (ii) Prospect's allegations of fraud by ESA are part of a cover up by Prospect (Ex. K) (ephfields on 10/19/07 and 10/8/07), (iii) Prospect committed bank fraud by failing to properly report the status of the ESA loan to its lender Rabobank (Ex. I), (iv) ESA was a valuable company which Prospect destroyed (Ex. K) (fmrpsecemploee on 4/1/08; icsemployee on 12/28/07), (v) Prospect lied to the Bankruptcy Court, and (vi) Prospect has substantial lender liability exposure (Ex. K) (fmrpsecemploee on 4/1/08). Some of the attacks question the health of Mr. Barry. (Ex. K) (Free3warren on 2/29/08)

Many of the posts appear to be from insiders with purported personal knowledge of the inner workings of Prospect. These include allegations that (i) Mr. Barry terrorizes Prospect employees (Ex. K) (ephfields on 12/5/07), (ii) Prospect employees are underpaid by 20% (ephfields on 10/17/07), (iii) Mr. Barry bullies Prospect's Board of Directors (Ex. K) (ephfields on 2/19/08 "Barry bullies the Board"), (iv) the workout officer at Prospect in charge of the ESA matter resigned over ethical concerns with ESA (Ex. K) (fmrpsecemploee on 4/1/08), and (v) Prospect may sue ESA's investment banker. (Ex. K) (fmrpsecemploee on 4/1/08) One post, allegedly reflecting conversations with two Prospect employees, is a good example:

> [Prospect employee] Bob Everett did in fact resign due to ethical concerns over how Barry exposed PSEC to lender liability. It was ESA and Everett expressed his concerns many times regarding PSECs lender liability exposure in this matter…

> [John Barry's] arrogance and incompetence caused the ESA mess, very simple. JB exposed you all to MASSIVE liability accordingly and destroyed the future earning potential of YOUR asset that held a 2 Billion dollar contract award from the federal

government…  The man is an arrogant abusive moron — [Prospect] does NOT meet the requirements to maintain this award as I understand from the [Prospect employee] Klaussman who managed the project initially.  Eric was the scapegoat when JBs plan blew up in his face and Everett was the circus cleanup crew following Barry with a snowshovel trying to scoop up all his BS…  Don't be surprised to see lawsuits…

(Ex. K, p.1)

In February of 2008, a Yahoo user known as Shelper67 posted a number of communications claiming he had access to internal Prospect documents which would expose Prospect to have lied to its lender Rabobank about ESA.  (Ex. I)  Other users encouraged Shelper67 to post the documents, and transmit them to the courts and the SEC.  (Ex. I)

On or about February 8, 2008, Shelper67 posted a confidential report exchanged between Prospect and its lender Rabobank which detailed Prospect's portfolio holdings and highly confidential information concerning each one.  (Ex. I)  Prospect immediately contacted Yahoo's abuse desk and notified Yahoo that material non-public information had been posted.  (Prospect Affidavit)  Yahoo agreed and removed the posted report from the Yahoo site and virtually all Shelper67's Yahoo postings.  (Prospect Affidavit)

Prospect does not yet have conclusive proof that Free3warren, with his obvious access to inside information, provided that report to Shelper67.  However, Free3warren poured fuel on the Rabobank posting by expressing concern over the information in the report.  (Ex. I) (2/8/08 post)  Other users interacting with Free3warren claimed that the Rabobank record proved Prospect engaged in bank fraud.  (Ex. I)  Free3warren further stated "Interesting stuff Shelper.  Keep it coming."  (Ex. I) (2/8/08 post)  Shelper67 promised to post even "more disturbing" data in the future.  (Ex. I) (2/8/08 post)

### 5.    Yahoo Subpoena

Although the accusations leveled against Prospect on Yahoo are false and defamatory, Prospect became very concerned about certain patterns.   Confidential and proprietary

12

information was posted on Yahoo.  Yahoo users claimed to have access to other internal records of Prospect.  Some of the Yahoo users, including Free3warren, appeared to be Prospect insiders. Prospect's internal litigation strategies on ESA were even discussed on Yahoo.  (Ex. K) (fmrpsecemploee)  There was also the appearance and reality of users encouraging one another to disclose more insider information on Prospect.

The sudden increase of Yahoo users in early 2008 who began to chat about ESA raised more concerns.  If some of these new users were Prospect insiders, who were they?  Were they currently working for Prospect?  Were some of the new users former officers of ESA who decided to post in a public forum the same poisonous slander which they presented to the Trustee?  Worse yet, were Prospect insiders coaching the former officers of ESA on how to put pressure on Prospect?  Were the Prospect insiders sharing confidential and privileged litigation strategies with the former officers of ESA?

Prospect is in a credibility battle with the former ESA directors in the Bankruptcy Case. If Prospect wins the battle, it will be able to pursue millions of dollars in claims in the Bankruptcy Case benefiting Prospect and all unsecured creditors.  If Prospect loses the battle, Prospect will likely face a lengthy and expensive lender liability suit from a bankruptcy trustee. Hence, Prospect must attack the credibility of the former ESA officers.  One way to do this is to prove that the poisonous accusations against Prospect originated with one or more disgruntled employees, officers or directors of Prospect, and therefore are tainted, inaccurate and biased.

The dilemma is how to build the bias case.  The Prospect mole only appeared on Yahoo. Prospect needed to act quickly because internet service providers typically only retain user information for 90 days.  Hence, if Prospect followed a rabbit trail which turned out to be a dead end and then wanted to serve Yahoo or another internet service provider a subpoena, the

information may disappear before the subpoena is issued.  Prospect's private investigator asked to interview all the former officers and directors of ESA.  All refused an interview.  (Dec.¶ 34) Also, given their past fraudulent conduct and self interest, statements from the former ESA officers would probably not be reliable.

The only avenue which appeared open to Prospect was to serve a subpoena on Yahoo to obtain the identities of the Yahoo users.  Prospect could then see if any Prospect insiders were listed among the users, and ask them, probably under oath, if they had any communications with the former officers of ESA.

On April 16, 2008, Prospect issued a subpoena on Yahoo.  (Ex. X)  Yahoo notified the users of the subpoena.  Counsel for Free3warren appeared and objected to the subpoena.  (Ex. G) Counsel claimed Free3warren was nothing more than an interested investor exchanging information about Prospect.  (Ex. G)  Counsel claimed Free3warren only analyzes public information and offers opinion on that public information.  (Ex. G)  Counsel further claimed that Free3warren only operated under the username Free3warren. Free3warren's counsel proposed a settlement by which Free3warren would sign an affidavit (with name redacted) on all these points.  (Ex. G)

Prospect agreed to the proposal of Free3warren with some modifications.   (Ex. H) Prospect wanted Free3warren to represent that he was not a current or former employee, officer or director of Prospect, and agree to have his identity verified by an independent third party. (Ex. H)

Free3warren's counsel refused these proposed changes and filed a motion to quash the subpoena in the Northern District of California.  (Ex. G)  The motion has not been fully briefed or argued.  The reason Free3warren refused to deny that he is a former employee, officer or

director of Prospect is obvious.  He is one.  Why else would Free3warren choose an expensive motion to quash over a simple denial?  Free3warren is at least one of the moles Prospect needs to uncover to prove Prospect's bias theory and the claim of transmitting internal Prospect documents and information to the Yahoo message board, inflicting great harm on Prospect.

On May 22, 2008, Prospect issued a second subpoena to Yahoo to discover the identify of other Yahoo users who posted messages about ESA.  (Ex. Y)  After Yahoo notified the new users by email dated May 29, 2008, Free3warren's counsel confessed to Prospect's counsel that contrary to her prior representations, Free3warren had posted other messages on the Yahoo finance site under the user name "Wiseone718."  (Ex. EE)  Counsel claimed Free3warren would not use this additional user name in the future.  (Ex. EE)  Counsel also denied that Free3warren was using the similar name "Wiseone7181" on Yahoo.  (Ex. EE)

Prospect reviewed the messages posted by Wiseone718 and Wiseone7181.  Wiseone718 posted messages on Yahoo which were an exchange of messages between Wiseone718 and Free3warren.  (Ex. J)  This reveals that Free3warren was talking to himself on Yahoo about Prospect using two different user names.  (Ex. J)  This gives the false appearance of a conversation among different users.  This is hardly the behavior of an innocent investor. Furthermore, Free3warren (as wiseone718) solicited posters for false sworn statements made by Prospect in Court and invited anyone with that information to send it to Prospect's independent Board of Directors.  Free3warren (as free3warren) replied:

Well stated.  I wish I had thought to post this.

(Ex. J)  This is a blatant attack on Prospect.  Free3warren wanted to stir up possible perjury charges and a Board of Director investigation.

Free3warren's twisted behavior also raises the issue of how may other user names has Free3warren adopted to have conversations with himself.  Is Free3warren also Wiseone7181?

Wiseone7181 has posted 811 times on the Prospect finance page with Yahoo.  Many of these postings deal with ESA.  Nothing can be ruled out at this point.

This means it is possible Free3warren is posting under other user names.  Free3warren may be the Prospect insider who has been posting confidential and proprietary information of Prospect on Yahoo.  Free3warren may have disclosed other confidential and proprietary information to the former officers of ESA outside the Yahoo message board.  Free3warren may have instructed the former ESA officers on how to put pressure on Prospect both on the Yahoo message board and with the Trustee and Bankruptcy Court.  Free3warren clearly has an axe to grand with Prospect and Mr. Barry.  Free3warren is obsessed with harming Prospect and Mr. Barry.  Any information transmitted by Free3warren to the former ESA officers and then to the Trustee or Bankruptcy Court is heavily biased and Prospect has the right to make the argument to the Trustee and the Bankruptcy Court that the accusations are biased.

### 6.    Cablevision Subpoena

Prospect decided to go on the offensive to ferret out the Prospect insiders who were trafficking in Prospect confidential and proprietary information.  On March 13, 2008, an agent of Prospect posted a message on Yahoo under the alias "citykidd" which states:

> In addition to the Rabobank information that has already been posted, I think I can provide some further insight that you guys may find valuable.  I prefer not to post it here as I don't want to draw the attention of lil' drawstring and her master.  I will email it to a select group of you…"

(Ex. T)  On March 14, 2008, at 11:50AM, citykidd posted another message on Yahoo:

> …I have already emailed a few of you at your Yahoo e-mails and I trust you will find what I sent you far more valuable than a loan breakdown…

16

(Ex. T)   Three minutes later, to obtain this inside information, someone from IP address 69.120.35.31 clicked on citykidd's Yahoo email address to view the email and attachment from citykidd.  This click relayed the IP address to Prospect.

On June 13, 2008, Prospect issued a subpoena on Cablevision to disclose John Doe's identity based on John Doe's IP address.  (Kounce Dec.)  On June 23, 2008, counsel for John Doe called counsel for Prospect and posed a number of questions about the subpoena.  (Kounce Dec.)  Prospect's counsel offered a quick and inexpensive way to dispose of the subpoena without the disclosure of John Doe's identity.  John Doe simply had to disavow any personal connection to Prospect or ESA.  (Kounce Dec.)  Instead of doing this, John Doe filed the motion to quash.  By selecting an expensive litigation strategy over a simple disclaimer that he is a Prospect insider, John Doe reveals that he is an insider using his privileged access to obtain and circulate inside information.  John Doe may even be Free3warren and does not want the Court in California to know that he attempted to traffic in insider information by clicking onto the citykidd e-mail.  John Doe should admit or deny in his reply papers whether he is Free3warren. Silence will undoubtedly mean that he is Free3warren.

John Doe is not innocent.  He also posted messages under the user name activinvst on Yahoo.  (Ex. L)  He informed Yahoo that his actual name was Tom Poston of Greenwich, Connecticut.  (Ex. Z) (activinvst uses same IP Address as John Doe)  There is no such person listed in Greenwich at the address provided by "Tom Poston."  (Dec.)  Hence, John Doe provided false subscriber information to Yahoo.  John Doe did this because he knew he was up to no good.

Prospect needs to speak to John Doe.  Prospect needs to know if John Doe is Free3warren.  Prospect needs to know whether John Doe is a current or former employee, officer or director of Prospect.  Prospect needs to know if John Doe has trafficked in confidential and

17

proprietary information of Prospect.  Prospect needs to know if John Doe has disclosed confidential and proprietary information to the former officers of ESA to use against Prospect in the Bankruptcy Case.  Prospect needs a chance to piece together its bias argument so that it can protect millions of dollars in litigation claims.

### III.     ARGUMENT

### A.     JOHN DOE LACKS STANDING TO QUASH THE SUBPOENA

"In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness."  Langford v. Chrysler Motor Co., 513 F.2d 1121, 1126 (2d Cir.1975).  "However, several courts have found that a party has standing to challenge a non-party subpoena where the party has a sufficient privacy interest in the confidentiality of the records sought."  ADL, LLC v. Tirakian, 2007 WL 1834517 (E.D.N.Y.), p.2; also Rouson v. Eicoff, 2006 WL 2927161 (E.D.N.Y.) at p.7; U.S. v. Crea, 853 F.Supp. 72, n.1 (E.D.N.Y. 2004) (absent an infringement of Fourth or Fifth Amendment rights, the motion to quash a subpoena on a third-party must be denied).

Here, Prospect served a subpoena on Cablevision, not John Doe.  Prospect seeks the production of Cablevision's records, not John Doe's.  Hence, John Doe has no standing to quash the Cablevision subpoena.

There are no privacy rights at issue.  A computer user does not have a legitimate expectation of privacy in their subscriber information which is conveyed to an internet service provider.  U.S. v. Perrine, 518 F.3d 1196, 1204 (10th Cir. 2008) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation").  Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) ("Computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person - the system operator"); U.S. v. D'Andrea, 497

F.Supp.2d 117, 120 (D.Mass. 2007) ("…internet users have no reasonable expectation of privacy in their subscriber information, the length of their stored files, and other noncontent data to which service providers must have access").  John Doe cannot obtain standing based on any privacy interest.  Cablevision's user terms and conditions also make it clear that John Doe's subscriber information may be disclosed to third-parties.  (Ex. W)  ("You acknowledge, consent and agree that we may access, preserve and disclose your subscriber information, including your Personally Identifiable Information, your account information and content if required to do so by law or in a good faith belief that such access, preservation or disclosure is reasonably necessary to:  (a) comply with legal process… (c) respond to claims that any content violates the rights of third parties… or (e) protect the rights, [or] property… [of] the public").

John Doe cites Chazin v. Lieberman, 129 F.R.D. 97 (S.D.N.Y. 1990) for the proposition he has standing to protest a third-party subpoena to protect John Doe's First Amendment rights. (John Doe's Memorandum of Law, p5).  This is wrong.  Nowhere does the Court in Chazin address First Amendment rights.  Only privacy rights are at issue.  Chazin, 129 F.R.D. at 98 ("The moving defendants argue that they have personal privacy rights in the records sought by plaintiff.  The claim is sufficient to give them standing to pursue their present motion").

**B.      ANY OBJECTIONS TO THE SUBPOENA HAVE BEEN WAIVED.**

Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure allows a party who has been served with a subpoena to object to the subpoena within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service.  "The fourteen day time limitation to serve written objections to a subpoena is crucial as failure to do so typically constitutes a waiver of such objections."  In re Corso, 328 B.R. 375, 384 (E.D.N.Y. 2005).

Neither Cablevision nor John Doe raised an objection to the subpoena in a timely manner. Prospect issued the subpoena on June 6, 2008. (Kounce Dec., Ex. A) The production deadline was June 13, 2008. (Kounce Dec., Ex. C) Cablevision did not contact John Doe about the subpoena until June 18, 2008. (Kounce Dec., Ex. B) John Doe never engaged counsel until June 23, 2008. (Kounce De., Ex. C) John Doe's counsel made no contact with Prospect until June 23, 2008 (17 days after the subpoena was issued, and 10 days after the response deadline). John Doe did not file any written objection to the subpoena until July 1, 2008 when John Doe filed his motion to quash (25 days after service of the subpoena, and 18 days after the response deadline). By any measure, Cablevision and John Doe have failed to respond to the subpoena in a timely manner. Accordingly, Cablevision and John Doe have waived their right to object to the subpoena.

"[I]n certain circumstances and for good cause the failure to timely serve written objections will not bar consideration of the objections." Id. "Such circumstances may be found where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoena witness is a non-party acting in good faith; *and* (3) counsel for the witness and counsel for the party serving the subpoena were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." Id.

None of the three requirements for an exception to the waiver rule apply here. First, Prospect's demand is not overbroad. Prospect only seeks John Doe's actual name and address. Second, the failure to respond in a timely manner is proof of a lack of good faith efforts to comply with Rule 45. Id. Third, no one raised a written objection to the subpoena until July 1, 2008. Even the call from John Doe's counsel to Prospect took place 17 days after the subpoena was issued.

20

### C.   THE BALANCE OF HARMS WEIGHS HEAVILY IN FAVOR OF DISCLOSURE

A subpoena will be quashed if it "requires disclosure of privileged or other protected matter and no exception or waiver applies."  Fed.R.Civ.P 45 (c)(3)(A)(iii).  "The party requesting that the subpoena be quashed must show good cause for protection by specifically demonstrating that disclosure will cause a clearly defined and serious harm."  London-Sire Records, Inc. v. Doel, 542 F.Supp.2d 153, 163 (D.Mass. 2008).  "The Court balances the harm of disclosure against the harm to the other party of restricting discovery."  Id.

"Courts evaluating requests to identify information from ISPs regarding subscribers have considered a variety of factors to weigh the need for disclosure against First Amendment interests."  General Bd. of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc., 2006 WL 3479332 (E.D.N.Y.).  "These factors include:  (1) a concrete showing of a prima facie claim of actionable harm, (2) specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy."  Id. (citing Sony Music Entm't Inc., 326 F.Supp.2d at 564-65).

In this balancing test, it is important to remember that while the First Amendment protects anonymous speech, especially anonymous political speech, (Buckley v. American Constitutional Law Found., 525 U.S. 182, 200, 119 S.Ct. 636 (1999)), "[a]nonymous speech, like speech from identifiable sources, does not have absolute protection."  Sony Music Entertainment Inc. v. Does 1-40, 326 F.Supp.2d 556, 562-63 (S.D.N.Y. 2004).  For example, an anonymous speaker has no First Amendment right to engage in obscenity, Roth v. United States, 354 U.S. 476, 483, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), libel, Beauharndis v. Illinois, 343 U.S. 250, 266, 77 S.Ct. 725, 96 L.Ed. 919 (1952), copyright infringement, Harper & Row Publishers, Inc.

v. Nation Enters., 471 U.S. 539, 555-56, 105 S.Ct. 2218, 85 L.Ed. 2d 588 (1985), misleading or commercial speech, Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of NY, 447 U.S. 557, 563-64, 100 S.Ct. 2343, 75 L.Ed. 351 (1980), or use of "fighting words," Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

The distinction between commercial and non-commercial speech is significant. World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F.Supp.2d 514, 524 (S.D.N.Y. 2001) ("[T]he level of First Amendment protection afforded a party 'depends on whether the activity sought to be regulated constitutes commercial or noncommercial speech.'") (quoting Bolger v. Youngs Dry Prods., Corp. 463 U.S. 60, 65, 103 S.Ct. 2875, 77 C.Ed. 469 (1983)). "Commercial speech is afforded a lesser degree of protection than other constitutionally safeguarded forms of expression, such as political speech." Gorran v. Atkins Nutritionals, Inc., 464 F.Supp.2d 315, 326 (S.D.N.Y. 2006). "Commercial speech that is false or misleading is afforded no First Amendment protection at all." Id.; also Goldberg v. Cablevision Sys.Corp., 261 F.3d 318, 327 (2d Cit. 2001) (citing Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 566, 1000 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Here, we know that the poster used multiple aliases to mislead. "In determining whether speech is commercial, the Court considers three factors: (1) whether the communication is an advertisement, (2) whether the communication refers to a specific product or service, and (3) whether the speaker has an economic motivation for the speech." Gorran, 464 F.Supp.2d at 326.

Here, as discussed at length above, Prospect may lose millions of dollars in litigation claims if it is deprived of the ability to prove that the false and defamatory accusations against Prospect were fed to ESA officers by one or more disgruntled employees, officers or directors of Prospect. Prospect has the right to prove that the information is tainted by bias.

Prospect should not be forced to deal with the Trustee and the Court with one arm tied behind its back.

John Doe's potential harm, on the other hand, is that his First Amendment rights could be violated. However, these rights are razor thin to begin with because the speech at issue here is commercial speech. Also, John Doe's act of clicking on a link to obtain insider and proprietary information receives no protection under the First Amendment. An attempt to traffic in insider information is not protected speech. Moreover, John Doe does not even have any expectation of privacy in subscriber information. Finally, if Cablevision does not respond to the subpoena, the subscriber information will soon be lost under Cablevision's retention policy. The mole could escape detection. The balance of harms weighs decidedly in favor of Prospect.

### D.    THE SUBPOENA DOES NOT VIOLATE THE COMMUNICATIONS ACT

John Doe is wrong when he alleges that Prospect was required to secure a court order before Cablevision may release John Doe's identity. (John Doe Memorandum of Law, p.2, n.3). The Communications Act specifically permits the disclosure of names and addresses of subscribers without a court order. 47 U.S.C. § 551(c)(2)(C).

### E.    JOHN DOE SHOULD NOT BE PERMITTED TO PROCEED ANONYMOUSLY

A motion by a party to proceed anonymously in litigation will usually only be granted in cases which deal with matters of the "utmost intimacy." Doe V. Shakur, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (refusing to allow sexual assault victim to proceed anonymously in her civil suit against her attackers). The driving factors are "whether" identification would put the [affected party] at risk of suffering physical or mental injury." EW v. New York Blood Center, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). "Courts should not permit parties to proceed pseudonymously

just to protect the parties' professional or economic life." <u>Doe v. United States Life Ins. Co.</u>, 123 F.R.D. 437, 439 n.1 (S.D.N.Y. 1988).

Here, John Doe has failed to articulate any risk of physical or mental injury. Hence, his motion to proceed anonymously should be denied.

### F.    JOHN DOE'S MOTION FOR LEGAL FEES SHOULD BE DENIED

Prospect has taken responsible steps to avoid imposing undue burden or expense on John Doe as required under Federal Rule of Civil Procedure 45(c)(1). Prospect in fact offered an inexpensive way to resolve the subpoena short of a motion to quash. (Kounce Dec. Ex. D) Prospect asked John Doe to confirm no connection with Prospect or ESA. John Doe refused this inexpensive path and chose to litigate his indefensible attempt to traffic in insider and proprietary information.

### IV.    CONCLUSION

Based on the foregoing, Prospect respectfully requests that the Motion be denied, and that the Court award other and further relief.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

 /s/ Christopher P. Schueller
Christopher P. Schueller (CS 9525)
301 Grant Street, 20th Floor
One Oxford Centre
Pittsburgh, PA  15219
(412) 562-8800

Attorneys for Respondent Prospect Capital Corporation

Dated: July 9, 2008

24

BUCHANAN INGERSOLL & ROONEY PC
Christopher P. Schueller (CS 9525)
301 Grant Street, 20th Floor
One Oxford Centre
Pittsburgh, PA  15219
(412) 562-8800
Attorneys for Prospect Capital Corporation

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                          :          Misc. 08-347
IN RE RULE 45 SUBPOENA ISSUED TO          :
CABLEVISION SYSTEMS CORPORATION      :
REGARDING IP ADDRESS 69.120.35.31          :
                                                          :
------------------------------------------------------------x

### DECLARATION OF CHRISTOPHER P. SCHUELLER IN SUPPORT OF PROSPECT CAPITAL CORPORATION'S OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENA AND OTHER RELIEF

**CHRISTOPHER P. SCHUELLER**, declares under penalty of perjury as follows:

1.      I am a shareholder in Buchanan Ingersoll & Rooney PC, attorneys for the Plaintiff Prospect Capital Corporation ("Prospect").

2.      I make this Declaration in connection with Prospect's Opposition to John Doe's Motion to Quash Subpoena and Other Relief.

3.      Attached as Exhibit A is a true and accurate copy of the August 31, 2007 Order (A) Approving Bidding Procedures In Connection With The Proposed Sale of Its Assets, (B) Scheduling An Auction Sale And Hearing Date To Confirm Said Sale, (C) Scheduling A Bidding Deadline In Connection With Such Sale, (D) Approving Form And Manner Of Notice Thereof, (G) Granting Related Relief entered in the bankruptcy case of ESA Environmental Specialists, Inc. ("ESA")  pending in the United States Bankruptcy Court for the Western District of North Carolina ("Bankruptcy Court") at  Case Number 07-31532 ("ESA Bankruptcy Case")..

4.    Attached as Exhibit B is a true and accurate copy of the September 28, 2007 Order Under 11 U.S.C. §§ 105 And 363 Approving:  (I) Asset Purchase Agreement, And (II) Sale Free And Clear of Liens Claims And Encumbrances entered in the ESA Bankruptcy Case.

5.    Attached as Exhibit C is a true and accurate copy of the October 1, 2007 Order granting the Emergency Joint Motion of ESA Environmental Specialists, Inc. and Prospect Capital Corporation for an Order Approving (A) Debtor's Entry into a Subcontract and Related Escrow Agreement, (B) Related Modifications to the Asset Purchase Agreement, and (C) Related Amendments to the Cash Collateral Order entered in the ESA Bankruptcy Case.

6.    Attached as Exhibit D is a true and accurate copy of the February 15, 2008  Order Granting In Part And Denying In Part Motion OF Hanover Insurance Company For Order (A) Compelling ES and ICS And Prospect Capital Corporation To Immediately Pay Cure Costs On Assumed Subcontracts; And (B) Authorizing Hanover To Exercise Its Surety Rights In Completing All ESA Contract Bonded By Hanover entered in the ESA Bankruptcy Case.

7.    Attached as Exhibit E is a true and accurate copy of the Motion Pursuant To 11 U.S.C. §1112 To Convert Case to One Under Chapter 7 filed by Prospect in the ESA Bankruptcy Case.

8.    Attached as Exhibit F is a true and accurate copy of the February 27, 2008 Order Converting Case And Directing Appointment of Chapter 7 Trustee entered in the ESA Bankruptcy Case.

9.    Attached as Exhibit G is a true and accurate copy of the Motion of Anonymous Poster A/K/A "Free3Warren" to Quash Subpoena; Motion for Fees and Costs ("Free3Warren

2

Motion") filed in the United States District Court for the Northern District of Californian ("California Court") in Case No. 3:08-mc-80115 ("California Case").

10.     Attached as Exhibit H is a true and correct copy of electronic mail exchange dated from May 16, 2008 through May 22, 2008 between Christopher P. Schueller and Arpana Rajagopal-Durbin, attorney for Free3Warren in the California case.

11.     Attached as Exhibit I is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance in February of 2008.

12.     Attached as Exhibit J is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance by user name Wiseone718.

13.     Attached as Exhibit K is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance on October 7, 2007 through April 1, 2008.

14.     Attached as Exhibit L is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance on February 13, 2008.

15.     Attached as Exhibit M is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance by Free3Warren from November 26, 2006 to February 27, 2007.

16.     Attached as Exhibit N is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance from February 29, 2008 to March 14, 2008.

17.     Attached as Exhibit O is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance.

18.     Attached as Exhibit P is a true and accurate copy of a message posted to the Yahoo Message Board Business & Finance.

19.     Attached as Exhibit Q is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance.

20.     Attached as Exhibit R is a true and accurate copy of messages posted to the Yahoo Message Board Business & Finance.

21.     Attached as Exhibit S is a true and accurate copy of a summary of posts on ESA.

22.     Attached as Exhibit T are true and accurate posts related to citykidd.

23.     Attached as Exhibit U is a true and accurate copy of the Application for Final Compensation and for Approval of Post-Conversion Administrative Expense filed by Law Offices of Nancy E. Johnson in the ESA Bankruptcy Case.

24.     Attached as Exhibit V is a true and accurate copy of the Yahoo Customer Privacy Policy.

25.     Attached as Exhibit W is a true and accurate copy of the Cablevision Customer Privacy Policy.

26.     Attached as Exhibit X is a true and accurate copy of the letter dated May 9, 2008 from Yahoo to Schueller responding to Prospect's April 16, 2008 subpoena.

27.     Attached as Exhibit Y is a true and accurate copy of the letter dated May 27, 2008 from Yahoo to Schueller responding to Prospect's May 22, 2008 subpoena.

28.     Attached as Exhibit Z is a true and accurate copy of the letter dated June 13, 2008 from Yahoo to Schueller responding to Prospect's May 22, 2008 subpoena.

29.     On February 27, 2008, the Bankruptcy Court appointed Stanley M. Campbell as the Chapter 7 Trustee over ESA ("Trustee").  I immediately opened negotiations with the Trustee's attorney Burt Shuford ("Mr. Shuford") to allocate litigation responsibilities and

proceeds to benefit both Prospect and ESA's bankruptcy estate.  As a condition to any deal, Prospect required the Trustee to release Prospect on any potential lender liability claims.

30.     The Trustee has taken the position that, not unusual, he needed to investigate possible lender liability claims against Prospect before agreeing to any terms with Prospect.  As part of his investigation, the Trustee interviewed the former employees, officers and directors of ESA.

31.     Mr. Shuford has disclosed to me that the former officers and directors of ESA have accused Prospect of (i) fraud, (ii) exercising control over ESA, and (iii) lacking competence in its underwriting.  The former officers also have alleged that Prospect and its officers lied to the Bankruptcy Court and are known to have committed many other acts of fraud in transactions other than ESA.  The former ESA officers further claim that Prospect's D&O and fraud claims are an effort to deflect attention from Prospect's wrongdoing with ESA.

32.     To date, the Trustee has still not executed an agreement with Prospect concerning the ESA litigation, although the Mr. Shuford has stated that the Trustee will do so.  The Trustee and Prospect have exchanged comments on a proposed agreement.

33.     Copies of some e-mail correspondence I have had with the Mr. Shuford are attached as Exhibit AA.

34.     After the Bankruptcy Case was converted to Chapter 7, Prospect hired a private investigator to complete a forensic examination of ESA and interview witnesses.  The purpose of the investigation was to identify all relevant facts for potential litigation claims in the Chapter 7 bankruptcy case, including the D&O Claims.  The investigator completed this investigation and uncovered new details of the fraud by ESA.  These include (i) the creation of $1,203,557.43 in fictitious invoices in ESA's accounts receivable aging schedule; (ii) removal of over $1.6 million

in contractor payables from the aging report; (iii) inflation of 2006 EBITDA by over $3 million; and (iv) the creation of fictitious customer accounts and projects. Prospect's D&O Claims are rock solid.

35.     The former officers and directors of ESA refused to be interviewed by Prospect's private investigator.

36.     I have researched whether there is a Tom Poston in Greenwich, Connecticut and could find none.

37.     Attached as Exhibit BB is Prospect's summary of the number of posts on Prospect on Yahoo broken down by user name.

38.     Attached as Exhibit CC is a true and accurate copy of the opposition of Prospect Capital Corporation to the Debtor's Emergency Motion for the Interim Use of Cash Collateral.

39.     Attached as Exhibit DD is a true and accurate copy of Prospect's Opposition to the Motion of Hanover to Compel payment of cure costs.

40.     Attached as Exhibit EE is a true and accurate copy of an e-mail dated May 29, 2008 from Aparna Rajagopal-Durbin to me.


Dated:  July 9, 2008

                                         /s/ Christopher P. Schueller
                                        CHRISTOPHER P. SCHUELLER

DAVIS WRIGHT TREMAINE LLP
  By:   Lacy H. Koonce, III (LK-8784)
1633 Broadway, 27th Floor
New York, New York 10019
(212) 489-8230
Attorneys for Anonymous Movant
  John Doe

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
IN RE RULE 45 SUBPOENA ISSUED TO          :
CABLEVISION SYSTEMS CORPORATION           :
REGARDING IP ADDRESS 69.120.35.31         :          Misc. 08-347
                                                             :
-------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF JOHN DOE'S CONSOLIDATED
(1) MOTION TO QUASH SUBPOENA DIRECTED TO CABLEVISION SYSTEMS
CORPORATION; (2) MOTION FOR ATTORNEY'S FEES; AND (3) MOTION TO
PROCEED ANONYMOUSLY**

Non-party movant John Doe respectfully submits this reply memorandum of law in

support of his consolidated (1) motion filed pursuant to Fed. R. Civ. P. 45(c)(3) to quash the

subpoena issued on June 6, 2008, by Prospect Capital Corporation ("Prospect") to Cablevision

Systems Corporation ("Cablevision") in connection with *In re ESA Environmental Specialists,*

*Inc.*, a bankruptcy action (docket # 07-31532) pending in the United States District Court for the

Western District of North Carolina; (2) motion for attorney's fees pursuant to Fed. R. Civ. P.

45(c)(1); and (3) motion to proceed anonymously as a John Doe.

### I. PRELIMINARY STATEMENT

Now that Prospect has finally revealed its alleged basis for this subpoena, as its counsel

refused to do when the parties conferred in advance of this motion to quash, it is clear that, had

Prospect provided this explanation previously, this motion could have been avoided, *if* Prospect's

stated basis is, in fact, its actual motivation.  The sole purported basis for Prospect's claim that

non-party John Doe has any information even arguably relevant to the ESA bankruptcy
proceedings in which this subpoena has been issued is an unsupported allegation that John Doe
may have passed (unidentified) proprietary information to ESA Environmental Specialists, Inc.
("ESA") that may have harmed Prospect (in unspecified ways) in the bankruptcy proceeding.

John Doe submits herewith a sworn statement[1] ("Doe Decl.") that confirms that *he has
never provided any such information to anyone at ESA either directly or indirectly* and
moreover that:  he has no connection with ESA; no connection to the underlying bankruptcy
proceeding; is not a current or former director, officer or employee of ESA; has never
communicated with any employee, director, or officer of ESA; has never communicated with
Prospect, ESA, or any of the other anonymous posters (outside of Prospect public message
boards) regarding the bankruptcy proceeding or the loan on which Prospect's claims are based;
and has only provided opinions on such message boards derived from an analysis of public
information.  The subpoena, therefore, should be quashed as moot.

The above information is all that Prospect states that it needs in connection with this
subpoena and then some.  But as Prospect concedes, Prospect *knew* that John Doe was willing to
swear to this information over a month ago, before it issued this subpoena, because John Doe
volunteered through counsel to provide a similar affidavit in response to a *different subpoena*
issued to a different Internet service provider (which it later abandoned, when faced with a
motion to quash).  The only condition John Doe put on the provision of that information then,
and the only protection he seeks from the Court now, is that his First Amendment rights be
respected such that his identity not be revealed in connection with anonymous commentary he
has posted publicly on Yahoo! message boards.  Prospect refused to accept the earlier affidavit,

---

[1] Doe's signature on the declaration has been redacted from the version submitted to the Court to
preserve Doe's anonymity; Doe's counsel will maintain the unredacted version in its files.

insisting that John Doe also reveal identifying information about himself, without providing any explanation as to why it needed that additional information.

What John Doe fears is that this subpoena is a fishing expedition to reveal his identity so that Prospect can engage in some type of retaliatory attack for his privileged anonymous posts, which have at times been critical of Prospect's management and their actions, but none of which are defamatory or otherwise violate Prospect's rights. (Indeed, Prospect tosses around terms like "slander" in its opposition but has not pointed to <u>any</u> defamatory material posted by John Doe.) John Doe's concerns are well-founded, because Prospect's response to this motion, and its egregious behavior in obtaining John Doe's IP address and in connection with the earlier subpoena, demonstrate conclusively that what Prospect is still after is not information relevant to the underlying bankruptcy, but John Doe's identity, for purposes unstated and unknown.

Prospect's tactics have been beyond aggressive in pursuing John Doe's identity, and indeed beyond the pale. In order to obtain John Doe's IP address, an agent of Prospect made an anonymous, pretextual posting on a financial message board offering "information" about Prospect. John Doe responded to that posting by indicating that, if the information was material non-public information, he did not want it. Prospect Opp'n Ex. T. Prospect's agent persisted, saying that he was sending information to a number of regular posters' e-mail accounts. *Id.* At no time did the agent state that the information he was sending was proprietary and confidential, and, in fact, it was not: it was a computer virus that caused the computer of the person who opened the e-mail attachment to send the recipient's IP address back to Prospect. Use of a computer virus in this manner is likely a violation of applicable statutes and of the common law, as discussed below. And it is this single piece of unlawfully obtained information that Prospect used to identify Cablevision as John Doe's ISP and to issue this subpoena.

John Doe seeks attorney's fees on this motion because even the *stated* basis for the subpoena – that Prospect believes someone is passing proprietary information to ESA – is built upon mere supposition and not a shred of evidence. Moreover, Prospect's theory of why it needs information about the supposed "mole" for the purposes of the bankruptcy litigation simply does not hold water. This alone would be enough to justify an award of attorney's fees. However, in light of the facts that Prospect was offered the very information it claims to seek before it issued the subpoena, that it has been using the courts in two jurisdictions as foils and has forced John Doe to file two motions to quash, and that it appears to be seeking the information for other than its stated purposes, attorney's fees clearly should be awarded here.

John Doe has absolutely nothing to hide here, other than his true identity. The content of his message board postings are all publicly available. He has submitted a declaration attesting to the fact that he has not done any of the things Prospect suspects someone of doing, and does not possess any relevant information other than what he has seen posted publicly on the same message boards or from public sources. He stands ready to answer any further questions the Court may have to satisfy itself that he has provided all information relevant to this proceeding (so long as that questioning is performed by the Court or a neutral party *in camera* and outside the presence of Prospect and its counsel, to preserve his First Amendment rights).

By contrast, Prospect has broken the law and appears to have abused the subpoena power. By issuing two subpoenas for the same information, then abandoning the defense of one of those subpoenas once John Doe moved to quash, Prospect has already broken through one layer of John Doe's First Amendment protection by linking his screen name with an IP address by process of elimination. It has tried to bully John Doe into providing identifying information both in connection with the earlier subpoena and with this subpoena. The current subpoena – itself

rooted in the unlawful use of a pretextual IP-address-mining e-mail – has no bearing whatsoever on the bankruptcy proceedings and is a transparent attempt to root out Prospect's critics, the First Amendment (and Rule 11) be damned.  It must be quashed.

## II.    ADDITIONAL FACTS

As Doe explained in his prior memorandum in support of the motion to quash, Prospect's attempts to force him to disclose his identity have backed him into a corner: either Doe must abdicate his protected First Amendment rights (*e.g.*, to anonymity online) or he must protect those rights in court.  What Doe did not – and could not, without abdicating those very rights by partially revealing his identity – set forth initially was that this is the second attempt by Prospect to improperly use a civil subpoena, under pretext of necessity to the bankruptcy proceedings, to unmask its online critics, John Doe in particular.  Now that Prospect has done so (of course, *after* forcing Doe to file his motion to quash), the full history of this dispute is laid bare.  That history demonstrates, unequivocally, that the subpoena here is entirely unwarranted.

John Doe posts on the Yahoo! message board regarding Prospect as "Free3warren" and, on three occasions, as "wiseone718" (contrary to Prospect's insinuations, Doe has used only those two names to post on the board (Doe Decl. ¶¶ 2, 3)).  On March 13, 2008, a user identified as "citykidd" submitted a post claiming that s/he had information regarding Prospect that could be of interest to the other participants on the board.  Prospect Opp'n Ex. T; Doe Decl ¶ 5.  Doe, posting as Free3warren, stated unequivocally that, if the information was "MNPI" (material non-public information), he did not want it.  Prospect Opp'n Ex. T; Doe Decl ¶ 6.  (Other posters suggested that "citykidd" simply post the information publicly.  Prospect Opp'n Ex. T.)

On or about March 14, 2008, Doe received an e-mail in his Free3warren Yahoo! inbox, ostensibly from "citykidd."  Doe Decl. ¶ 7.  In fact, the e-mail was a fraudulent effort by

Prospect to extract Free3warren's IP address by deceit. And it worked: Doe clicked on the

provided link, but saw nothing except garbled text. Doe Decl. ¶ 7. Instead, it apparently

contained malicious computer code that sent his IP address to Prospect. Prospect Opp'n at 16.[2]

Rather than seek the identity of anyone based on this information – not that it would have

any legitimate basis for doing so – Prospect then issued a subpoena in the Northern District of

California to Yahoo! seeking the identity of over twenty users who frequent the Prospect

message board, including Free3warren. Doe Decl. ¶ 8; Prospect Opp'n Ex. G. Once notified by

Yahoo! of the subpoena, Doe engaged Prospect, via counsel and in good faith, to seek a

negotiated resolution. What ensued thereafter was striking: First, Doe discovered that

Prospect's counsel had not even reviewed Free3warren's posts prior to issuing the subpoena. *Id.*

Ex. G (Durbin Decl. ¶ 15); *see also id.* (Durbin Decl. ¶ 16 (counsel's failure to deny, despite

opportunity, that he had failed to review Free3warren's posts prior to issuing the subpoena)).

Second, once Prospect's counsel *did* review Free3warren's posts after the fact, he was forced to

concede that "he did not believe Free3warren had any connection with ESA." *Id.* (Durbin Decl.

¶ 17). Third, Prospect's counsel was also forced to concede that "he could not find anything in

[Free3warren's] messages that would lead him to believe Free3warren obtained his information

from any sources other than publicly available sources." Fourth, he conceded that Free3warren's

posts were "intelligent," "thoughtful," and "above the fray." *Id.* (Durbin Decl. ¶¶ 15, 17).

In any event, Doe offered, through counsel, to provide an affidavit responding to the sole

purported basis for the subpoena here: the notion that he (or some other user of the Yahoo!

board) was a "mole" passing information to or among persons connected with ESA. The

---

[2] Prospect's opposition characterizes the transaction as a click on "citykidd's Yahoo e-mail
address." This is an obfuscation, apparently designed to hide the fact that Prospect affirmatively
sent the data-mining e-mail directly to Doe/Free3warren in an attempt to deceive him into
revealing his IP address and, eventually, his identity.

affidavit would have definitively answered the question now pressed by Prospect in these proceedings by attesting that Doe was not a mole. Prospect Opp'n Ex. H. More specifically, the affidavit would have stated that Doe had no known contact with any person affiliated with ESA, had not traded in insider information, and had not provided information to ESA related to the bankruptcy proceedings or otherwise. *Id.*; Doe Decl. ¶ 12. (These central aspects of the proffered affidavit are glaringly omitted from Prospect's opposition. Prospect Opp'n at 14.) But this was not enough for Prospect, and the offer was rejected. *See* Prospect Opp'n Ex. H. With no other viable option, Doe moved to quash the subpoena, on similar grounds upon which he now moves to quash the Cablevision subpoena: *i.e.*, that compliance with the subpoena would violate his well-established right to speak anonymously via the Internet, and all for no justifiable reason relative to the underlying bankruptcy litigation.

Rather than respond to the motion in California (which remains unopposed, after the passage of the deadline for opposition), Prospect then issued the subpoena at issue here. As set forth in Doe's motion to quash, after Doe was notified of the subpoena, obtained New York counsel, and contacted Prospect (all within days of receiving notice), Prospect refused to connect any of the dots (or, understandably, to explain how it fraudulently obtained Doe's IP address). Indeed, Prospect did not even explain that it knew (or at least strongly suspected) that Doe and Free3warren were the same person, let alone confess that Prospect was just seeking another route to discover Doe's identity after being rebuffed in California. Certainly, Prospect made no effort to explain (for such an explanation would be ludicrous, in light of the parties' prior dealings and Doe's already-offered affidavit) what information Doe could possibly possess relative to the bankruptcy litigation. Instead, Prospect played a game of "chicken" and only provided any explanation for its actions *after* Doe had filed his motion to quash. As set forth below, this

explanation falls well short of justifying forced abdication of Doe's First Amendment rights.

## II. ARGUMENT

Prospect does not bother to demonstrate what information Doe could provide that could even relate – let alone be crucial to – the bankruptcy proceedings. Indeed, Prospect makes Doe's case for him by conceding that the one arguably relevant question Prospect ostensibly seeks to ask (whether Doe is a purported "mole" feeding information to ESA) has already been answered in the negative. Prospect Opp'n Exs. G (Durbin Decl. ¶¶ 15-17), H; Doe Decl. ¶¶ 16-23. Instead, Prospect makes a series of generic allegations of "bias" and of unidentified defamation (by Yahoo! posters as a whole, and none by Free3warren), none of which have any bearing on the questions presented here. Such allegations do not come close to demonstrating the requisite level of need, centrality and relevance to the underlying litigation. Moreover, Prospect's other arguments are similarly misguided: the notion that Doe lacks standing is a misrepresentation of the law; the notion that Doe has somehow waived his arguments by not timely responding to a subpoena directed at a third party is nonsensical; Doe's speech is not commercial speech; and even Prospect's interpretation of the Communications Act (which is not a direct basis for the motion to quash) is blatantly erroneous.

## A.      Doe Has Not Provided ESA With Proprietary Information.

As set forth above, Doe is not a "mole." *See also* Doe Decl. ¶ 23 ("To the best of my knowledge I have had no contact of any kind with anyone associated with ESA or Prospect about the ESA investment or the bankruptcy proceedings to which the subpoena at issue here relates."); Prospect Opp'n Exs. G, H (same). He has passed no information to ESA, let alone inside information, and therefore possesses nothing of any value for the underlying bankruptcy proceedings. *Cf.* Prospect Opp'n at 2-3 (discussing Prospect's belief that a "mole" has "shared confidential and proprietary 'information' with the ESA officers"), 18 ("Prospect needs to know

if John Doe has disclosed confidential and proprietary information to the former officers of ESA to use against Prospect in the Bankruptcy Case."), 22 (alleging an inability to "prove that the false and defamatory accusations against Prospect were fed to ESA officers"), 23 (alleging that the mole might "escape detection"). Moreover, Prospect knew this to be the case long before it issued the subpoena. *See* Prospect Opp'n Exs. G (Durbin Decl. ¶¶ 15-17 (admissions by Prospect's counsel that he believed Free3warren had no connection to ESA and posted only regarding public information), H (Free3warren's proffered affidavit). Doe has no knowledge of anyone passing such information to ESA. Doe Decl. ¶ 23. Given that uncovering the identity of this alleged "mole" is the sole stated basis for the subpoena, the subpoena must, therefore, be quashed. In short, Prospect needs nothing Doe can offer.[3] *See Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088, 1095-96 (W.D. Wash. 2001) (requiring, *inter alia*, a showing of good faith and the information's "direct and material" relevance to a "core claim or defense" in the underlying action before an anonymous Internet user may be unmasked by a subpoena directed to an ISP).

**B.    Doe Has Standing.**

Contrary to Prospect's representations, Doe is not asserting a right to privacy. He is asserting his rights under the First Amendment to engage in anonymous expression via the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004) ("Courts have recognized the Internet as a valuable forum

---

[3] To the extent Prospect's opposition is based on the notion that Doe's postings on the Yahoo! site somehow influenced ESA or harmed Prospect, that notion is equally faulty. First, anything Doe posted is publicly available, and Prospect is already aware of it; thus Prospect has no need of his identity to determine whether the postings did or did not influence ESA or harm Prospect. Further, Prospect fails to identify anything Doe posted that involves insider information. As such, Doe's speech is protected by the First Amendment, both as anonymous speech and as public commentary on matters of public record. Indeed, if ESA principals were somehow influenced by Yahoo! message board postings, the connection between the credibility of ESA principals in the bankruptcy litigation and the content of the discussion on the message board is severely attenuated, at best. The connection between ESA's credibility and the identity of Doe, a single contributor to the board's discussions, is even more attenuated.

for robust exchange and debate."); *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) (discussing the importance of encouragingthe "unfettered and unregulated development of free speech on the Internet"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (finding state statute prohibiting distribution of anonymous campaign literature unconstitutional on First Amendment grounds and observing that, "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent").

Prospect's privacy-based arguments, therefore, are entirely off-point. Worse, they misrepresent the law. While Prospect would have the Court believe that a third party may only have standing to quash a Rule 45 subpoena if the movant can show a *privacy* interest, Prospect Opp'n at 18-19, this is manifestly false. A movant has standing whenever he can claim any "personal right or privilege" regarding the information sought, not just a privacy interest. 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (1995) (no standing "unless the party claims some personal right or privilege with regard to the documents sought"); *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) ("Ordinarily a party has no standing to seek to quash a subpoena to one who is not a party unless the party claims some personal right or privilege with regard to the documents sought.") (quoting Wright & Miller);[4] *Dart Indus., Inc. v. Liquid Nitrogen Processing Corp. of Cal.*, 50 F.R.D. 286, 291 (D. Del. 1970) (standing where movant asserted a "personal right" based on the information's secrecy and confidentiality); *see also Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (same). First Amendment rights are plainly personal rights and privileges establishing

---

[4] Strangely, Prospect cites *Chazin* for the notion that only privacy rights establish standing. Prospect Opp'n at 19. While the particular right called upon by the party in *Chazin* was a privacy right, this was merely an application of the general rule, cited by the court and beyond reasonable dispute: a third party to a subpoena has standing where he claims a "personal right" regarding the information to be disclosed. *Chazin*, 129 F.R.D. at 98 (quoting Wright & Miller).

standing. *See, e.g., 2TheMart.com*, 140 F. Supp. 2d at 1093-95 (quashing subpoena issued to ISP

seeking disclosure of anonymous Internet speaker/movant's identity); *Highfields Capital Mgmt.*

*v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) (quashing subpoena directed to third-party ISP

seeking identity of Internet poster/defendant); *see also Dendrite Int'l, Inc. v. Doe No. 3*, 775

A.2d 756 (N.J. Super. Ct. App. Div. 2001) (affirming denial of motion to compel the revelation

of identity of anonymous Internet speaker/defendant); *see also Sony Music*, 326 F. Supp. 2d at

563 ("courts have held that civil subpoenas seeking information regarding anonymous

individuals raise First Amendment concerns") (citing *NAACP v. Ala. ex rel Patterson*, 357 U.S.

449, 462 (1958); *NLRB v. Midland Daily News*, 151 F.3d 472, 475 (6th Cir. 1998).

### C.    Doe's Challenge To The Subpoena Has Not Been Waived.

Nor has Doe somehow waived his right to challenge the subpoena. Prospect would like

to have it both ways. First, Prospect asserts that Doe lacks standing to challenge the subpoena

because it was issued to Cablevision. Then, Prospect asserts that Doe has somehow waived his

ability to challenge the subpoena because *Cablevision* – the only party to whom the timeliness

requirements of the subpoena apply (*see* Fed. R. Civ. P. 45(c)(2)(B)) – did not file written

objections within the seven-day period imposed by Prospect.

Whatever may be said of Cablevision's compliance, Cablevision is not the party

objecting to the subpoena. In any event, as set forth in Doe's motion to quash, Doe took action

immediately after receiving notice of the subpoena and filed his motion within the time provided

to him by Cablevision before it would release the information.[5] From the date that Doe received

---

[5] The Communications Act provision referred to by Prospect for the notion that disclosure of
Doe's identity by Cablevision without a court order would not violate the Act, 47 U.S.C.
§ 551(c)(2)(C), does Prospect no good. That provision only applies to disclosures to other cable
services which neither disclose "directly or indirectly" the "extent of any viewing or other use by
the subscriber of a cable service or other service provided by the cable operator" nor "the nature
of any transaction" – *i.e.*, aggregate mailing lists and other non-specific disclosures. *Id.*; *see also*

notice of the subpoena until the date he filed his motion to quash, twelve days (eight business days) elapsed. Under any measure, this was not an untimely response.

Indeed, even if the waiver inquiry applied to Doe – which it does not – it is plainly satisfied here. *See In re Corso*, 328 B.R. 375, 384 (E.D.N.Y. 2005). <u>First</u>, the subpoena exceeds the fair bounds of discovery, as it seeks information utterly irrelevant to the underlying litigation and unnecessary to serve the specific purpose for which the subpoena was ostensibly issued. <u>Second</u>, Doe is a non-party witness acting in good faith. Doe acted as quickly as he could, seeking alternative means to resolve the issue without having to abdicate his First Amendment right to speak anonymously and filing his motion to quash eight days after obtaining counsel and first contacting Prospect.[6] <u>Finally</u>, Prospect blithely contends that Doe failed to satisfy the third element in *Corso*, that counsel "were in contact ... prior to the time the witness challenged the legal basis for the subpoena." *Id.*; *see* Prospect Opp'n at 20 ("None of the three requirements . . . apply here"). Prospect simply ignores the fact that counsel for Doe contacted Prospect's counsel within three business days after Doe received notice of the subpoena (indeed, on the very day his counsel was retained) and attempted to resolve the matter. *See* Koonce Decl. Ex. C. Regardless of the test applied, Prospect has failed to justify its claim of waiver.

### D.    Doe's Speech Is Protected Anonymous Speech.

Rather than address the voluminous case law establishing both Doe's right to engage in expressive activity on the Internet and the standards set forth for determining whether that right

---

H.R. Rep. No. 98-934 at 77-79 (1984) (noting these requirements and explaining that disclosure may not reveal "when the subscriber used the service"). Disclosure of Doe's identity would reveal both the extent of his viewing and use of Cablevision's services and the nature of at least one transaction.

[6] Revealingly, Prospect's only argument to the contrary is the circular, makeweight assertion that the "delay" itself is evidence of bad faith. Prospect Opp'n at 20. Of course, if noncompliance with the timeliness rule were sufficient to show bad faith, the party seeking to quash would fail the *Corso* test in every case.

may be overcome for discovery purposes, Prospect simply ignores the law. Instead, Prospect

asserts – without factual analysis – that Doe's speech is commercial speech. It is not.

The "core notion" of commercial speech encompasses "speech which does no more than

propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66

(1983) (citation and internal quotation omitted). Doe's purported speech here lies far outside of

this core. And while some communication outside of this core may be considered commercial

speech, Doe's speech lies well beyond those types of communication as well. Whether speech is

commercial "depends on factors such as whether the communication is an advertisement,

whether the communication makes reference to a specific product, and whether the speaker has

an economic motivation for the communication." *Bad Frog Brewery v. N.Y. St. Liquor Auth.*,

134 F.3d 87, 97 (2d Cir. 1998) (citing *Bolger*, 463 U.S. at 66-67). Prospect identifies the right

test, but fails to apply it in any measure, instead opting to dive into a discussion of the harms it

faces in the bankruptcy litigation. Prospect Opp'n at 22. In any event, Doe's discussion of

Prospect, by any account, is not commercial: it is not an advertisement, it makes no reference to

any product, and it involves no economic motivation whatsoever. *See* Prospect Opp'n Exs. G-T.

Without this straw man, Prospect is left with nothing to support its alleged need for Doe's

identity. As set forth in Doe's motion to quash, the applicable standard (ignored by Prospect) in

cases where civil litigants seek to unmask anonymous third-party Internet speakers who are not

parties to the underlying litigation requires a "clear showing on the record" that:

    (1) the subpoena seeking the information was issued in good faith and not for any
        improper purpose;

    (2) the information sought relates to a core claim or defense;

    (3) the identifying information is directly and materially relevant to that claim/defense;
        and

(4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*2TheMart.com*, 140 F. Supp. 2d at 1095.

Prospect has satisfied none of these requirements. As noted, Prospect learned long ago that Doe is not the alleged "mole" feeding information to ESA. Prospect Opp'n Exs. G, H. In fact, as Prospect's counsel has conceded, he has no connection to ESA whatsoever. Prospect Opp'n Exs. G, H; Doe Decl. ¶¶ 13-16. Accordingly, knowing Doe's identity will do nothing to assist Prospect in proving the existence of someone who may have "fed to ESA officers" "tainted" or "biased" information. Prospect Opp'n at 22. Indeed, given Prospect's already-acquired knowledge that Doe is not a mole, Prospect's *bad* faith and *improper* purposes are amply demonstrated.[7]

Prospect's ancillary arguments are equally unavailing. First, Prospect is wrong to suggest that Doe's unwitting mouse-click (to obtain "information," not "insider" information, as Prospect suggests) of the link Prospect sent him via its unlawful[8] and fraudulent e-mail is unprotected

---

[7] Even if the test that has been applied for applications to unmask anonymous litigants in the same underlying litigation (as opposed to non-parties) is applied here, such as the test applied in *General Bd. of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, No. CV 06-3669, 2006 WL 3479332, at *5 (E.D.N.Y. Nov. 30, 2006), Prospect's subpoena is still woefully deficient, because Prospect has not made a concrete showing of actual harm (for all the reasons stated above); because Prospect could obtain the information from another source (discovery of ESA itself, which is a party to the litigation and has been on the receiving end of the purported information); because there is no need to subpoena the information to pursue the claim because Doe already offered it; and because Doe has a personal right or privilege of anonymity (the First Amendment privilege) that he seeks to protect.

[8] *See* N.Y. Penal Law § 156.05 ("A person is guilty of unauthorized use of a computer when he or she knowingly uses, causes to be used, or accesses a computer, computer service, or computer network without authorization."); Conn. Gen. Stat. §§ 53-541(b)(6) (unauthorized use by copying of computer data communicated by or produced by a computer or computer network criminally prohibited), 53a-251(b)(1), (c) ("A person is guilty of the computer crime of unauthorized access to a computer system when, knowing that he is not authorized to do so, he accesses or causes to be accessed any computer system without authorization."); *see also Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1233, 1236 (D. Ill. 2005) (spyware as common

speech. Such an act – the receipt of information – is unquestionably protected. *Stanley v.*

*Georgia,* 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the

right to receive information and ideas."); *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965)

(holding that freedom of speech and freedom of the press include "the right to distribute, the

right to receive, the right to read, and freedom of inquiry") (internal citation omitted); *Bantam*

*Books, Inc. v. Sullivan*, 372 U.S. 58, 64-65 n.6 (1963) (holding that freedom of the press

"embraces the circulation of books as well as their publication"); *Martin v. City of Struthers*, 319

U.S. 141, 143 (1943) (holding that freedoms of speech and of the press embrace and protect "the

right to distribute literature" and "the right to receive it").  Indeed, this right to receive and

distribute information and ideas, "regardless of their social worth, is fundamental to our free

society." *Stanley*, 394 U.S. at 564 (citing *Winters v. New York*, 333 U.S. 507, 510 (1948)).  In

any event, the speech Doe seeks to protect is not limited to the sole act of clicking on Prospect's

fraudulent e-mail: If his identity is disclosed, *all* of his protected online anonymity will be

eviscerated. Second, as noted, *supra*, Doe's privacy is not at issue. Finally, it is irrelevant that

the data could be lost pursuant to Cablevision's data retention policy – cited for the notion that

"the mole could escape detection" (Prospect Opp'n at 23) – since Doe is not the alleged mole.

**E.     Prospect Failed To Take Reasonable Steps To Avoid Imposing Undue Burdens And Expenses Upon John Doe, And Doe Is Therefore Entitled To An Award Of Attorney's Fees.**

Fed. R. Civ. P. 45(c)(1) provides that, where an issuing party fails "to take reasonable

steps to avoid imposing undue burden or expense" upon persons subject to a subpoena, the

issuing court "must enforce" the duty to take such steps and must "impose an appropriate

sanction," including, in the court's discretion, attorney's fees. *Id.* Prospect's failure to justify its

---

law trespass to personal property).

duplicative and harassing subpoena warrants an award of fees to Doe and other sanctions as the

Court deems appropriate.

Having been rebuffed in California, Prospect knew before issuing the subpoena that it

would do nothing to advance its case even if successful, and yet issued it anyway.  And when

Doe's counsel sought in good faith a means of avoiding motion practice, Prospect balked, hid the

ball, and only offered its meritless defenses of the subpoena in opposition to Doe's motion to

quash.  Indeed, as previously noted, apparently Prospect believes it knows Doe's identity, in any

event.  Koonce Decl. Ex. C.  One way or the other, this entire proceeding – the second with

which Doe has had to contend – has been a worthless exercise in futility.  In such circumstances,

Prospect cannot possibly be deemed to have taken "reasonable steps" to avoid unnecessary or

undue burdens and expenses upon John Doe.  Doe should be fully compensated.[9]

**F.    John Doe Is Entitled To Proceed Anonymously.**

Finally, because the only mean by which to preserve the rights he seeks to vindicate via

his motion to quash is to file this motion without identifying himself by name, John Doe

respectfully requests leave of this Court to proceed anonymously in this action.  *See*

*2TheMart.com*, 140 F. Supp. 2d at 1095-98; *Best Western Int'l, Inc. v. Doe*, No. CV-06-1537,

2006 WL 2091695, at *5 (D. Ariz. July 25, 2006).  This is a common method of preserving

protected First Amendment rights to speak anonymously, Prospect's hand-waving about

"physical or mental injury" notwithstanding.  *See id.*; *2TheMart.com*, 140 F. Supp. 2d at 1095-

97; *In re Does 1-10*, 242 S.W.3d 805 (Tex. App. 2007); *Doe v. Cahill*, 884 A.2d 451 (Del.

2005); *Highfields Capital Mgmt. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005); *Dendrite Int'l,*

---

[9] Even if Doe somehow were not entitled to all his fees, he should at the very least be
compensated for his fees in filing the motion to quash, given Prospect's staunch refusal to
provide any basis, prior to its opposition, for the subpoena.

16

*Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001).[10]

## III. CONCLUSION

For the foregoing reasons, anonymous movant John Doe respectfully requests that the

Court (1) grant his motion to quash Prospect's subpoena; (2) issue an award of attorney's fees in

favor of Doe; (3) grant Doe leave to proceed anonymously; and (4) provide such further relief as

the Court may deem appropriate.


Dated: New York, New York
        July 11, 2008

                                    Davis Wright Tremaine LLP


                                    Lacy H. Koonce, III (LK-8784)

                                    1633 Broadway, 27th Floor
                                    New York, New York  10019
                                    (212) 489-8230

                                    Attorneys for Anonymous Movant John Doe

---

[10] Contrary to Prospect's assertion, the First Amendment interests Doe seeks to vindicate are unrelated to "just" his "professional or economic life." Prospect Opp'n at 23-24 (quoting *Doe v. United States Life Ins. Co.*, 123 F.R.D. 437, 439 n.1 (S.D.N.Y. 1988)). Moreover, Prospect blatantly misrepresents the law when it contends that anonymity is only justified in cases of threatened physical or mental injury. The factors considered by the Court, in the exercise of its discretion, are far broader. *See, e.g., E.W. v. New York Blood Ctr.*, 213 F.R.D. 108,110-11 (E.D.N.Y. 2003) (observing that the "ultimate question" is whether a party has a substantial privacy right that trumps the presumption of openness in judicial proceedings, and discussing a "variety of factors" courts consider).

DAVIS WRIGHT TREMAINE LLP
  By:   Lacy H. Koonce, III (LK-8784)
1633 Broadway, 27th Floor
New York, New York 10019
(212) 489-8230
Attorney for Anonymous Movant
  John Doe


UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
IN RE RULE 45 SUBPOENA ISSUED TO                            :
CABLEVISION SYSTEMS CORPORATION                             :
REGARDING  IP ADDRESS 69.120.35.31                          :        Misc. 08-347
                                                            :
------------------------------------------------------------x


**DECLARATION OF JOHN DOE IN SUPPORT OF DOE'S CONSOLIDATED**
**(1) MOTION TO QUASH THE SUBPOENA ISSUED BY PROSPECT CAPITAL**
**CORPORATION; (2) MOTION FOR ATTORNEY'S FEES; AND**
**(3) MOTION FOR LEAVE TO PROCEED ANONYMOUSLY**

**JOHN DOE**, anonymous movant in this action to quash the Rule 45 subpoena issued by

Prospect Capital Corporation, hereby declares:

1.      I am the anonymous movant whose identity is the subject and target of the

Subpoena, dated June 6, 2008, issued by Prospect Capital Corporation (the "Subpoena") to

Cablevision Systems Corporation regarding IP address 69.120.35.31.  I submit this Declaration

in support of my consolidated (1) motion to quash the subpoena; (2) motion for attorney's fees;

and (3) motion for leave to proceed anonymously.

2.      I have, from time to time, posted messages anonymously as "Free3warren" and

"wiseone718" on the Yahoo! Finance message board for Prospect Capital Corporation

("Prospect"), accessible at http://messages.finance.yahoo.com/mb/PSEC.

3.      I have used no other usernames on Prospect's Yahoo! message board.

4.    I do not posses, nor have I used, offered, disseminated, or knowingly accessed inside, proprietary or confidential information regarding Prospect's loan to ESA or the subsequent bankruptcy proceeding.

5.    On March 13, 2008, a user identified as "citykidd" submitted a post to the board claiming that s/he had information regarding Prospect that could be of interest to the other participants on the board.

6.    On that date, I posted a message in response, signaling that if the "information" was material non-public information, I was not interested. Prospect Opp'n Ex. T.

7.    On March 14, 2008, I accessed my Yahoo! Free3warren email account, which contained a new message, received on or about that date from "citykidd." The email contained a link, which I clicked on, only to receive garbled text. I then suspected then that the email was a fraudulent attempt, most likely by Prospect principals, to smoke me out by causing me to unwittingly "ping" Prospect with my IP address, which they could then use to track me down and/or identify me.

8.    On April 16, 2008, Prospect issued subpoenas to Yahoo! Inc. for the identities of various users who post messages on the Yahoo! Prospect message board, including the identity of the Free3warren username I use to participate on the board.

9.    On April 22, 2008, Yahoo! notified me of the subpoena.

10.    Through counsel, I contacted Prospect to discern whether a means by which Prospect could obtain the information it sought without forcing me to disclose my identity was possible.

11.     Prospect indicated to my counsel that Prospect was seeking the identity of persons it suspected were passing confidential and/or inside information to ESA Environmental Specialists, Inc. regarding Prospect.

12.     Through counsel, I offered to attest that I had not done so.  Specifically, I offered to attest that I have no connection with ESA, have no connection to the underlying bankruptcy proceeding, am not a current or former director, officer or employee of ESA, have never communicated with any employee, director, or officer of ESA, have never communicated with Prospect, ESA, or any of the other anonymous posters outside of the Yahoo! Prospect message board regarding the bankruptcy proceeding or the loan on which Prospect's claims are based, have only provided my opinions on the Yahoo! board derived from my analysis of public information, and in the context of my status as an interested investor, and am not associated with any of the other subpoenaed user IDs.  I now attest to these same facts, as set forth below:

13.     I have no connection with ESA.

14.     I have no connection with the underlying bankruptcy proceeding.

15.     I am not a current or former director, officer or employee of ESA.

16.     I have never knowingly communicated with Prospect, ESA, or any of the other anonymous posters outside of the Yahoo! message board regarding the bankruptcy proceeding or the loan on which Prospect's claims are based.

17.     I have only provided my opinions on the Yahoo! board based on my analysis of public information, and in the context of my status as an interested investor.

18.     I am not associated with any of the other subpoenaed user IDs.

19.     No one other than me has posted on the Yahoo! Prospect message board from my computer.

20. I do not know the identity of the user who posts on that board as "activinvst" or why "activinvst" would have my same IP address at any given time.

21. I am not "wiseone7181" and do not know who "wiseone7181" is.

22. I am not "Shelper67" and do not know who "Shelper67" is.

23. To the best of my knowledge I have had no contact of any kind with anyone associated with ESA or Prospect about the ESA investment or the bankruptcy proceedings to which the subpoena at issue here relates.

24. I would be happy to answer any further questions the Court may have to satisfy itself that I have truthfully provided all information relevant to this proceeding, provided any such questioning is performed by the Court or a neutral party *in camera* and outside the presence of Prospect and its counsel, in order to preserve my First Amendment rights.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 11, 2008.

REDACTED

_____

Anonymous Movant John Doe