CYRIL J. DANTCHEV (SBN 129585)
Email: cyril.dantchev@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
707 Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 239-8700
Facsimile: (619) 702-3898

CHRISTOPHER P. SCHUELLER (*pro hac vice pending*)
Email: christopher.schueller@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
Phone: (412) 562 8800

MAGDELINE D. COLEMAN (*pro hac vice*)
Email: magdeline.coleman@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Phone: (215) 665-8700

Attorneys for Respondent
PROSPECT CAPITAL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: | Case No. 08-mc-80115-SI |
| ESA ENVIRONMENTAL SPECIALISTS, INC., | U.S. Bankruptcy Court (W.D.N.C.)<br>Case No. 07-31532 |
| Debtor. | **PROSPECT CAPITAL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO FREE3WARREN'S MOTION TO QUASH SUBPOENA AND FOR OTHER RELIEF** |
| | Judge: Hon. Susan Illston<br>Dept: Department 10, 19th Floor |
| | Date: July 25, 2008<br>Time: 9:00 a.m. |

1

## TABLE OF CONTENTS

2   I.    PRELIMINARY STATEMENT ............................................................1

3   II.   BACKGROUND ...............................................................................3

4         1.    ESA Loan ..................................................................................3

5         2.    Litigation in the Bankruptcy Case .............................................4

6         3.    Prospect Hires a Private Investigator .......................................7

7         4.    Free3warren .............................................................................8

8         5.    Yahoo Subpoena ......................................................................11

9         6.    Cablevision Subpoena..............................................................14

10  III.  ARGUMENT ..................................................................................17

11        A.    FREE3WARREN lacks standing to quash the subpoena .........................17

12        B.    The Balance of Harms Weighs Heavily in Favor of Disclosure...............18

13        C.    Free3warren's motion for legal fees should be denied ............................21

14  IV.   CONCLUSION................................................................................22

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                    CASE NO. 08-MC-80115-SI

1

## TABLE OF AUTHORITIES
## FEDERAL CASES

2

3
*Barber v. McCord Automobile Supply, Inc. (In re Pearson Industries, Inc.),*
    178 B.R. 753 (Bankr.C.D.Ill.1995).....................................................................5

4
*Beauharndis v. Illinois,*
    343 U.S. 250, 77 S. Ct. 725, 96 L. Ed. 919 (1952)............................................19

5
*Briggs v. Kent (In re Professional Investment Properties of America),*
    955 F.2d 623 (9th Cir. 1992) ...............................................................................5

6

7
*Buckley v. American Constitutional Law Foundation,*
    525 U.S. 182, 119 S. Ct. 636 (1999)...................................................................19

8
*In re Burlington Motor Holdings, Inc.,*
    231 B.R. 874 (Bankr. D. Del. 1999) .....................................................................5

9

10
*Central Hudson Gas & Electric Corp. v. Public Serv. Commission of NY,*
    447 U.S. 557, 100 S. Ct. 2343, 75 L. Ed. 351 (1980)..............................19, 20

11
*Chaplinsky v. New Hampshire,*
    315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942).........................................19

12

13
*In re Citi-Toledo Partners,*
    170 B.R. 602 (Bankr. N.D. Ohio 1994) .................................................................5

14
*Congress Credit Corp. v. AJC International,*
    186 B.R. 555 (D.P.R.1995).....................................................................................5

15

16
*Goldberg v. Cablevision System Corp.,*
    261 F.3d 318 (2d Cit. 2001) ...............................................................................20

17
*Gorran v. Atkins Nutritionals, Inc.,*
    464 F. Supp. 2d 315 (S.D.N.Y. 2006)................................................................20

18

19
*In re Grand Jury Subpoenas,*
    926 F.2d 847 (9th Cir. 1990) ...............................................................................17

20
*Guest v. Leis,*
    255 F.3d 325 (6th Cir. 2001) ..............................................................................18

21

22
*Harper & Row Publishers, Inc. v. Nation Enterprises,*
    471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)..................................19

23
*Highfields Capital Management L.P. v. Doe,*
    385 F. Supp. 2d 969 (N.D.Cal. 2005) .................................................................19

24

25
*In re Huntsville Small Engines, Inc.,*
    228 B.R. 9 (Bankr. N.D. Ala 1998) .......................................................................5

26

27
*Langford v. Chrysler Motor Co.,*
    513 F.2d 1121 (2d Cir.1975)...............................................................................17

28

- ii -

*London-Sire Records, Inc. v. Doel*,
    542 F. Supp. 2d 153 (D.Mass. 2008) ....................................................19

*In re Minnesota Alpha Foundation*,
    122 B.R. 89 (Bankr. D. Minn. 1990) ......................................................5

*In re P.R.T.C., Inc.*,
    177 F.3d 774 (9th Cir. 1999) ..................................................................5

*Roth v. United States*,
    354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)......................19

*See E.q. Reliance Insurance Co. of Illinois v. Weis*,
    148 B.R. 575 (E.D.Mo. 1992)..................................................................7

*Sony Music Entertainment Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004)...................................................19

*In re The V Companies and V-S Architects, Inc.*,
    274 B.R. 721 (Bankr. N.D. Ohio 2002) .................................................4

*U.S. v. Crea*,
    853 F. Supp. 72 (E.D.N.Y. 2004) .........................................................17

*U.S. v. D'Andrea*,
    497 F. Supp. 2d 117 (D.Mass. 2007) ....................................................18

*US v. Forrester*,
    512 F.3d 500 .........................................................................................18

*U.S. v. Miller*,
    425 U.S. 435, 96 S. Ct. 1619, 48 C.Ed.2d 71 (1976)..........................17

*U.S. v. Perrine*,
    518 F.3d 1196 (10th Cir. 2008) ............................................................18

*World Wrestling Federation Entertainment, Inc. v. Bozell*,
    142 F. Supp. 2d 514 (S.D.N.Y. 2001)...................................................19

**STATE CASES**

*ADL, LLC v. Tirakian*,
    2007 WL. 1834517 (E.D.N.Y.)..............................................................17

*In re Chapman Lumber Co., Inc.*,
    2006 WL. 3861107 (Bankr. N.D. Iowa 2006) .....................................5

*General Board of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*,
    2006 WL. 3479332 (E.D.N.Y.)...............................................................19

*Matrixx Initiatives, Inc. v. Doe*,
    138 Cal. App. 4th 872, 42 Cal.Rptr.3d (2006).....................................17

*Rouson v. Eicoff,*
    2006 WL. 2927161 (E.D.N.Y.) ..........................................................................17

*US v. Qingli,*
    2008 WL. 789899 (S.D.Cal.) ............................................................................17

*Wendell Watson v. The Management Network Group, Inc.(In re Nettle Corporation),*
    1995 WL. 736463 (Bankr. D.C. 2006) ...............................................................5

## FEDERAL STATUTES

11 U.S.C. § 1123(b)(3)(B) .....................................................................................5

11 U.S.C. § 544 .....................................................................................................5

Fed.R.Civ.P. 45 (c)(3)(A)(iii) ...............................................................................18

Fed.R.Civ.P. 45 (c)(1).............................................................................................21

1    Respondent Prospect Capital Corporation ("Prospect") respectfully submits this

2    memorandum of law in opposition to the consolidated motion ("Motion") by Free3warren (1) to

3    quash Prospect's subpoena issued on April 16, 2008 to Yahoo! Inc. ("Yahoo") in connection with

4    the bankruptcy case of ESA Environmental Specialists, Inc. ("ESA"), case number 07-31532

5    ("Bankruptcy Case") pending in the United States Bankruptcy Court for the Western District of

6    North Carolina ("Bankruptcy Court"), and (2) for attorney's fees.

7    **I.    PRELIMINARY STATEMENT**

8    Prospect is in an important legal battle to mitigate its losses on a series of loans it made to

9    ESA.  The only assets remaining for Prospect to recover in the Bankruptcy Case are millions of

10   dollars in litigation claims which Prospect succeeded to and purchased in the Bankruptcy Case.

11   Many of these claims only exist if there is a pending bankruptcy case.  However, Prospect cannot

12   pursue these litigation claims unless Prospect (i) secures a general release from a Chapter 7

13   bankruptcy trustee, (ii) agrees to share litigation proceeds with the bankruptcy estate for the benefit

14   of all creditors, and (iii) secures Bankruptcy Court approval of the release and agreement before the

15   litigation is commenced.

16   Some of the potential defendants in the anticipated litigation are former officers of ESA.

17   These ESA officers have embarked on a smear campaign with the trustee in an effort to persuade

18   the trustee to sue Prospect rather than give Prospect a release and litigation agreement.   The

19   potential defendants have claimed to the trustee that Prospect (i) is using the litigation to deflect

20   attention from its own wrongdoing, and (ii) has significant lender liability exposure.  These ESA

21   officers will undoubtedly make the same arguments to the Bankruptcy Court if the trustee and

22   Prospect ever submit a proposed release and litigation agreement to the Bankruptcy Court for

23   approval.

24   The "he said, she said" battle for the allegiance of the trustee and the Bankruptcy Court will

25   likely be resolved based on the credibility of Prospect versus the credibility of the former ESA

26   officers.   Because of the millions of dollars at stake for Prospect and all creditors, Prospect

27   understandably wants to prove to the trustee and Bankruptcy Court that the allegations of the former

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                    CASE NO. 08-MC-80115-SI

1  ESA officers lack credibility.  To that end, Prospect has a reasonable belief that one or more of its

2  current or former disgruntled employees, officers or directors, despite their fiduciary obligations to

3  Prospect, have shared confidential and proprietary "information" with the ESA officers, and that

4  these ESA officers are using this "information" to give credibility to their attack of Prospect before

5  the trustee.  Because the source for this venom is a disgruntled employee, officer or director,

6  Prospect argues the "information" is tainted, biased and lacking in credibility.

7          The problem Prospect faces, is that Prospect does not know the identity of the disgruntled

8  employee, officer or director breaching fiduciary obligations.  That person (or persons) has only

9  surfaced by posting messages on a Yahoo finance web site, and attempting to traffic in Prospect's

10 confidential and proprietary information on Yahoo through a user account with Cablevision

11 Systems Corporation ("Cablevision").  Hence, Prospect served subpoenas on both Yahoo and

12 Cablevision to uncover the Prospect "mole," and prove Prospect's belief that this person, in

13 violation of fiduciary duties to Prospect, is supplying inside "information" to ESA officers as part of

14 a vendetta against Prospect and its people.

15         One fact is now clear.  Free3warren is a current or former Prospect insider.  Any doubt on

16 this point was resolved when Free3warren refused to deny that he is an insider when that denial

17 alone would end this litigation.  As a Prospect insider, Free3warren is now the prime mole suspect

18 because (i) he is obsessed with Prospect as evidenced by his 506 posts on Yahoo in little over a

19 year, (ii) his personal attacks against Prospect and its officers on Yahoo show a complete lack of

20 objectivity, (iii) he has adopted at least three user names on Yahoo to give the false appearance that

21 viewpoints from multiple users are being expressed on Yahoo, (iv) he has made false statements to

22 Prospect to throw Prospect off his trail, (v) he has falsely informed Prospect and this Court that

23 Free3warren only had in his possession public information, and (vi) he has disclosed insider

24 information, sought to traffic in insider information, and encouraged others to traffic in insider

25 information.

26         Prospect seeks the identity of Free3warren to confirm whether he is the Prospect mole who

27 is working with the ESA officers to undermine Prospect's interests in the Bankruptcy Case.

28

- 2 -

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                    CASE NO. 08-MC-80115-SI

Free3warren does not want his true identity to be disclosed because (he claims) his First Amendment rights will be violated. Free3warren's arguments fail however because he has no standing to object to a subpoena which has been served on a third party. Also, the balance of harms weighs decidedly in favor of Prospect. Prospect has millions of dollars in litigation claims at risk. Free3warren has razor thin or non-existent First Amendment rights because the "speech" at issue is commercial speech. Under these circumstances, the Motion should be denied and Free3warren's identity revealed.

## II.    BACKGROUND

### 1.    ESA Loan

On April 11, 2007, Prospect funded a $12,200,000 loan to ESA. (Ex. CC)[1] Within days after the closing, ESA reported a liquidity crisis to Prospect. Prospect was stunned and puzzled as to how a liquidity crisis could arise so soon after the closing date. (Ex. CC) To address the liquidity crisis, Prospect amended its loan documents two times to loan ESA an additional $625,000 on May 5, 2007 and $950,000 on May 17, 2007. (Ex. CC)

After May 17, 2007, ESA continued to ask Prospect for additional money and claimed it could not continue operating without an immediate infusion of cash. (Ex. CC) Prospect refused additional funding and began an investigation process which revealed (i) substantial fraud perpetuated by Debtor's management both before and after the April 11, 2007 financing which covered up the liquidity crisis, (ii) over $1 million in closing proceeds were missing and apparently diverted, and (iii) ESA's two highest corporate officers paid themselves almost $500,000 in June of 2007 in the midst of ESA's liquidity crisis. (Ex. CC)

On August 1, 2007, ESA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. (Ex. CC) After the filing, ESA and Prospect negotiated the form of an Asset Purchase Agreement for the sale of substantially all of ESA's assets to

---

[1] References to "Dec." are to the Declaration of Christopher P. Schueller dated July 15, 2008, and "Ex" are the exhibits attached thereto.

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                    CASE NO. 08-MC-80115-SI

1   Prospect or its designee.  (Ex. B)  The three most significant assets were (i) real estate owned by

2   ESA, (ii) a subsidiary owned by ESA which was in the midst of its own liquidity crisis, and

3   (iii) litigation rights of ESA.  (Ex. B)  ESA was burning cash at a rapid pace, so the going concern

4   value of ESA was distressed and in need of a turnaround.  (Ex. CC)  Negotiations culminated on

5   August 24, 2007 with the filing of an Emergency Joint Motion filed by Prospect and the Debtor for

6   an order approving the asset sale.  (Ex. A)

7           The Court approved the sale procedures on August 31, 2007 and scheduled a sale hearing

8   for September 20, 2007.  (Ex. A)  On September 17, 2007, Prospect identified its designee as

9   Integrated Contract Services, Inc. ("Integrated").  (Ex. DD)  On September 28, 2007, the Court

10  entered an order approving the sale of assets to Integrated.  (Ex. B)  The assets included all

11  litigation rights of ESA ("Litigation Rights"), including without limitation, the right to pursue all

12  preference and fraudulent conveyance claims ("Chapter 5 Claims").  (Ex. B)  A closing on the sale

13  took place in early October of 2007.  (Ex. DD)  After the closing, Prospect became the 49% owner

14  of Integrated, and the senior secured lender of Integrated.  (Ex. DD)  Integrated defaulted on its loan

15  with Prospect and ceased operations in December of 2007.   Integrated then assigned all the

16  Litigation Rights back to Prospect.  (Ex. DD)  In the end, recovery on the Litigation Rights has

17  become a key to Prospect mitigating its losses.

18                     **2.    Litigation in the Bankruptcy Case**

19          On February 6, 2008, Prospect moved to convert the ESA Bankruptcy Case to a Chapter 7

20  case so that Prospect could pursue the Litigation Claims in bankruptcy.  (Ex. E)  These include

21  claims against the former directors and officers of ESA for wrongdoing ("D&O Claims"), for which

22  there is $5 million in insurance coverage.  (Ex. E)  There are another $2 million to $3 million in

23  Chapter 5 Claims.   The Bankruptcy Case was converted to a Chapter 7 case by order dated

24  February 27, 2008.  (Ex. F)

25          Conversion was critical because, without it, many of the litigation claims would have been

26  lost, including the Chapter 5 claims which only exist if there is a pending Bankruptcy Case.  *In re*

27  *The V Companies and V-S Architects, Inc.*, 274 B.R. 721, 740 (Bankr. N.D. Ohio 2002) (conversion

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                          CASE NO. 08-MC-80115-SI

1   warranted to permit a trustee to continue adversary proceeding); *In re Citi-Toledo Partners*, 170

2   B.R. 602, 609 (Bankr. N.D. Ohio 1994) (risk of losing preference claims warrants in favor of

3   conversion); *In re Minnesota Alpha Foundation*, 122 B.R. 89, 95 (Bankr. D. Minn. 1990)

4   (conversion granted where dismissal would result in loss of meritorious causes of action).

5       However, a Court will dismiss a Chapter 7 case if there will be no benefit to the bankruptcy

6   estate, *viz*, a benefit to *all* creditors, and not just a secured creditor. *Congress Credit Corp. v. AJC*

7   *Int'l,* 186 B.R. 555, 559 (D.P.R.1995)(Chapter 7 trustee should not act as a mere conduit for the

8   benefit of secured creditors only.); *Wendell Watson v. The Management Network Group, Inc.(In re*

9   *Nettle Corporation*), 1995 WL 736463 (Bankr. D.C. 2006)(Trustee does not have a duty to manage

10  assets, which have no value to the estate, for the benefit of secured creditors); *Barber v. McCord*

11  *Auto Supply, Inc. (In re Pearson Industries, Inc.),* 178 B.R. 753, 761(Bankr.C.D.Ill.1995) (The

12  trustee's major goal is to try to produce an estate for the debtor's unsecured creditors and he should

13  not act as a mere conduit for the benefit of secured creditors only.)

14      Moreover, Prospect must share Chapter 5 recoveries with other creditors who have standing

15  to pursue those claims. Section 544 of the Bankruptcy Code expressly authorizes trustees and

16  debtors to avoid various transactions including preferences and fraudulent transfers. 11 U.S.C. §

17  544. Avoidance powers also may be assigned to someone other than a debtor or trustee pursuant to

18  a confirmed plan of reorganization under 11 U.S.C. § 1123(b)(3)(B). Avoidances are transferable

19  outside of a plan of reorganization provided (i) that the creditor is pursuing interests common to all

20  creditors and (ii) the exercise of the powers will benefit all creditors. *In re P.R.T.C., Inc.*, 177 F.3d

21  774 (9th Cir. 1999) (approving transfer of avoidance powers where creditors will receive 50% of

22  the proceeds); *Briggs v. Kent (In re Professional Inv. Properties of Am.*), 955 F.2d 623, 625 (9th

23  Cir. 1992) (permitting assignment of avoidance powers to creditor outside of a reorganization plan);

24  *In re Chapman Lumber Co., Inc.*, 2006 WL 3861107 (Bankr. N.D. Iowa 2006) (creditor's standing

25  to pursue avoidance actions upheld where Court approved such transfer upon notice to all

26  creditors); *In re Huntsville Small Engines, Inc.*, 228 B.R. 9 (Bankr. N.D. Ala 1998) (no standing

27  where no distribution to unsecured creditors will be made); *In re Burlington Motor Holdings, Inc.*,

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                    CASE NO. 08-MC-80115-SI

1   231 B.R. 874 (Bankr. D. Del. 1999) (successor corporation lacked standing under Section 550(a) of

2   the Bankruptcy Code to recover transferred property where it was pursuing claims solely for its own

3   benefit).

4          On February 27, 2008, the Bankruptcy Court appointed Stanley M. Campbell as the Chapter

5   7 Trustee over ESA ("Trustee").   (Ex. F)   Prospect immediately opened negotiations with the

6   Trustee to allocate litigation responsibilities and proceeds to benefit both Prospect and ESA's

7   bankruptcy estate.  (Dec., ¶ 29-33)  As a condition to any deal, Prospect required the Trustee to

8   release Prospect on any potential lender liability claims.  (Dec., ¶ 29-33)

9          The Trustee took the position, not unusual, that he needed to investigate possible lender

10  liability claims against Prospect before agreeing to any terms with Prospect.  (Dec., ¶ 29-33)  As

11  part of his investigation, the Trustee interviewed the former directors and officers of ESA.  The

12  Trustee has disclosed to Prospect that the former officers and directors of ESA have accused

13  Prospect of (i) fraud, (ii) exercising control over ESA, and (iii) lacking competence in its

14  underwriting.  (Dec., ¶ 29-33)  The former officers have also attempted to assassinate the good

15  character of Prospect and its officers by alleging that Prospect and its officers lied to the Bankruptcy

16  Court and are known to have committed many other acts of fraud in transactions other than ESA.

17  (Dec., ¶ 29-33)  The former ESA officers claim that Prospect's D&O and fraud claims are an effort

18  to deflect attention from Prospect's wrongdoing with ESA.  (Dec., ¶ 29-33)  Counsel for one of the

19  ESA officers who filed a personal bankruptcy case has done substantial research on lender liability

20  claims against Prospect and lobbied the Trustee to assert these claims.  (Ex. U)

21         To date, the Trustee has still not executed an agreement with Prospect concerning the ESA

22  litigation, through the trustee says he will do so.  (Dec., ¶ 29-33)  Any such agreement must be

23  approved by the Bankruptcy Court to be binding.  (Dec., ¶ 29-33)  The Trustee and Prospect have

24  exchanged comments on a proposed agreement.  (Dec., ¶ 29-33)

25         The actions of the former ESA officers and their statements to the Trustee are a substantial

26  litigation risk to Prospect.  The former directors and officers may persuade the Trustee to (i) forgo

27  the D&O claims; (ii) refuse to enter into a litigation agreement with Prospect; or (iii) pursue lender

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                  CASE NO. 08-MC-80115-SI

liability claims against Prospect.   If there is no litigation agreement with the Trustee, the Bankruptcy Case may be dismissed and millions of dollars in Chapter 5 Claims, which can only be brought in a bankruptcy case, will be lost.   Moreover, the Trustee has a strong argument that any insured versus insured coverage exception in the D&O policy does not apply to the Trustee.   *See E.q. Reliance Ins. Co. of Illinois v. Weis*, 148 B.R. 575 (E.D.Mo. 1992), aff'd 5 F.3d 532 (8th Cir. 1993).   As a result, if the Trustee does not participate in the D&O Claims, D&O coverage could be lost.   Even if the Trustee agrees on terms with Prospect, the former officers of ESA will undoubtedly oppose any motion in the Bankruptcy Court for approval of an agreement between the Trustee and Prospect.

The bottom line is that for Prospect to keep the Bankruptcy Case alive to preserve the Chapter 5 Claims and put in the strongest coverage case for the D&O Claims, both the Trustee and the Bankruptcy Court need to conclude that a release of lender liability claims against Prospect is proper, and that the Chapter 5 Claims and D&O Claims are valid and worth  pursuing before the claims are even filed.  If the Trustee or the Court concludes that Prospect engaged in wrongdoing, Prospect's multi-million dollar litigation rights will be lost.

The credibility of the allegations flying back and forth between Prospect and the former ESA officers will be examined carefully by the Trustee and the Bankruptcy Court.  Credibility will likely be the deciding factor in the "he said, she said" battle between Prospect and the former ESA officers.

### 3.       Prospect Hires a Private Investigator

After the Bankruptcy Case was converted to Chapter 7, Prospect hired a private investigator to complete a forensic examination of ESA and interview witnesses.  (Dec.¶ 34)  The purpose of the investigation was to identify all relevant facts for potential litigation claims in the Chapter 7 bankruptcy case, including the D&O Claims.   (Dec.¶ 34)   The investigator completed this investigation and uncovered new details of the fraud by ESA.  (Dec.¶ 34)  These include (i) the creation of $1,203,557.43 in fictitious invoices in ESA's accounts receivable aging schedule; (ii) removal of over $1.6 million in contractor payables from the aging report; (iii) inflation of 2006

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                    CASE NO. 08-MC-80115-SI

1    EBITDA by over $3 million; and (iv) the creation of fictitious customer accounts and projects.

2    (Dec.¶ 34)   Hence, Prospect and ESA have strong D&O Claims.  The former officers of ESA

3    refused to be interviewed by Prospect's private investigator.  (Dec.¶ 34)

4              **4.      Free3warren**

5             Prospect is a publicly-traded company.  On or about November 28, 2006, a party with the

6    user name "Free3warren" began posting messages on the Yahoo finance website which were highly

7    critical of Prospect and its Chief Executive Officer John Barry ("Mr. Barry").  (Ex. M)   Prospect

8    noticed that Free3warren was actually disclosing information that could only be in the possession of

9    an insider.   (Ex. M)   Free3warren periodically made comments which reflected an insider's

10   understanding of how, *inter alia*, Prospect's Board of Directors operates, how Prospect's proxy

11   process works, how Prospect makes decisions on investments, Prospect's approach with investment

12   bankers, Prospect's approach with individual employees and Prospect's agreements with

13   subadvisors.  (Ex. M)  Prospect concluded that Free3warren must be a current or former employee,

14   officer or director of Prospect.

15          Free3warren posted on the Prospect Yahoo page over 506 times between December of 2006

16   and April of 2008.  (Ex. KK-NN)  Free3warren posted 36 messages on ESA.  (Ex. G)  On the site,

17   Free3warren appears to be chatting with other Yahoo users about Prospect.  (Ex. M-T)   When it

18   became public that the ESA loan was in distress, Free3warren was critical of Prospect's handling of

19   ESA and tried to generate further criticism from other Yahoo users concerning ESA.  (Ex. G)

20          Free3warren is no innocent investor.  He has a pathological obsession with John Barry and

21   Prospect.  His 506 messages on Yahoo about Prospect and John Barry took place in little over a

22   year.  (Ex. KK-NN)  Many of these messages are detailed and required considerable time and effort.

23   One post by Free3warren entitled "A Story" (page one of Ex. Q) is a good example:

24       A Story

25           In the spring of 2004, two failed venture capitalists, John Barry and Grier
26           Eliasek, gave up their goal of raising money to fund their proposed limited
             partnership.  The simple problem was that after every potential investor
27           did their due diligence on John, they ran away as fast as they could…

28

- 8 -

1   (Ex. Q)  The lengthy post continues with a history of the formation of Prospect, and private deals

2   between Mr. Barry and the President of Prospect Grier Eliasek, and concludes:

3           I've talked to a number of people who had involvement with Barry over
        the years, and the common theme is always, take my advice and don't get
4           involved with him!

5   (Ex. Q)  This is not about business with Free3warren.  It is personal.

6       Between December of 2007 and February of 2008, unusual activity appeared on the Yahoo

7   finance page.   A flurry of new users appeared and made numerous attacks on Prospect and

8   Mr. Barry concerning ESA similar to those attacks which had previously been made by

9   Free3warren.  (Ex. G and Ex. M-T)

10      Free3warren encouraged other users on Yahoo to engage in negative conversations

11  concerning Prospect and Mr. Barry.  (Ex. K) (ephfields on 12/5/07)  Some of the attacks include

12  allegations that (i) Mr. Barry "bullied" employees of Prospect to issue the ESA loan without proper

13  due diligence (Ex. K) (gander6684 on 2/4/08), (ii) Prospect's allegations of fraud by ESA are part

14  of a cover up by Prospect (Ex. K) (ephfields on 10/19/07 and 10/8/07), (iii) Prospect committed

15  bank fraud by failing to properly report the status of the ESA loan to its lender Rabobank (Ex. I),

16  (iv) ESA was a valuable company which Prospect destroyed (Ex. K) (fmrpsecemploee on 4/1/08;

17  icsemployee on 12/28/07), (v) Prospect lied to the Bankruptcy Court, and (vi) Prospect has

18  substantial lender liability exposure (Ex. K) (fmrpsecemploee on 4/1/08).   Some of the attacks

19  question the health of Mr. Barry.  (Ex. K) (Free3warren on 2/29/08)

20      Many of the posts appear to be from insiders with purported personal knowledge of the inner

21  workings of Prospect.  These include allegations that (i) Mr. Barry terrorizes Prospect employees

22  (Ex. K) (ephfields on 12/5/07), (ii) Prospect employees are underpaid by 20% (ephfields on

23  10/17/07), (iii) Mr. Barry bullies Prospect's Board of Directors (Ex. K) (ephfields on 2/19/08

24  "Barry bullies the Board"), (iv) the workout officer at Prospect in charge of the ESA matter

25  resigned over ethical concerns with ESA (Ex. K) (fmrpsecemploee on 4/1/08), and (v) Prospect may

26  sue ESA's investment banker.  (Ex. K) (fmrpsecemploee on 4/1/08)  One post, allegedly reflecting

27  conversations with two Prospect employees, is a good example:

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                    CASE NO. 08-MC-80115-SI

[Prospect employee] Bob Everett did in fact resign due to ethical concerns over how Barry exposed PSEC to lender liability. It was ESA and Everett expressed his concerns many times regarding PSECs lender liability exposure in this matter…

[John Barry's] arrogance and incompetence caused the ESA mess, very simple. JB exposed you all to MASSIVE liability accordingly and destroyed the future earning potential of YOUR asset that held a 2 Billion dollar contract award from the federal government… The man is an arrogant abusive moron — [Prospect] does NOT meet the requirements to maintain this award as I understand from the [Prospect employee] Klaussman who managed the project initially. Eric was the scapegoat when JBs plan blew up in his face and Everett was the circus cleanup crew following Barry with a snowshovel trying to scoop up all his BS… Don't be surprised to see lawsuits…

(Ex. K, p.1)

In February of 2008, a Yahoo user known as Shelper67 posted a number of communications claiming he had access to internal Prospect documents which would expose Prospect to have lied to its lender Rabobank about ESA. (Ex. I) Other users encouraged Shelper67 to post the documents, and transmit them to the courts and the SEC. (Ex. I)

On or about February 8, 2008, Shelper67 posted a confidential report exchanged between Prospect and its lender Rabobank which detailed Prospect's portfolio holdings and highly confidential information concerning each one. (Ex. I) Prospect immediately contacted Yahoo's abuse desk and notified Yahoo that material non-public information had been posted. (Ex. HH) Yahoo agreed and removed the posted report from the Yahoo site and virtually all Shelper67's Yahoo postings. (Ex. HH)

Prospect does not yet have conclusive proof that Free3warren, with his obvious access to inside information, provided that report to Shelper67. However, Free3warren poured fuel on the Rabobank posting by expressing concern over the information in the report. (Ex. I) (2/8/08 post) Other users interacting with Free3warren claimed that the Rabobank record proved Prospect engaged in bank fraud. (Ex. I) Free3warren further stated "Interesting stuff Shelper. Keep it coming." (Ex. I) (2/8/08 post) Shelper67 promised to post even "more disturbing" data in the future. (Ex. I) (2/8/08 post)

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                CASE NO. 08-MC-80115-SI

### 5.    Yahoo Subpoena

Although the accusations leveled against Prospect on Yahoo are false and defamatory, Prospect became very concerned about certain patterns.  Confidential and proprietary information was posted on Yahoo.  Yahoo users claimed to have access to other internal records of Prospect.  Some of the Yahoo users, including Free3warren, appeared to be Prospect insiders.  Prospect's internal litigation strategies on ESA were even discussed on Yahoo.  (Ex. K) (fmrpsecemploee) There was also the appearance and reality of users encouraging one another to disclose more insider information on Prospect.

The sudden increase of Yahoo users in early 2008 who began to chat about ESA raised more concerns.  If some of these new users were Prospect insiders, who were they?  Were they currently working for Prospect?  Were some of the new users former officers of ESA who decided to post in a public forum the same poisonous slander which they presented to the Trustee?  Worse yet, were Prospect insiders coaching the former officers of ESA on how to put pressure on Prospect?  Were the Prospect insiders sharing confidential and privileged litigation strategies with the former officers of ESA?

Prospect is in a credibility battle with the former ESA directors in the Bankruptcy Case.  If Prospect wins the battle, it will be able to pursue millions of dollars in claims in the Bankruptcy Case benefiting Prospect and all unsecured creditors.  If Prospect loses the battle, Prospect will likely face a lengthy and expensive lender liability suit from a bankruptcy trustee.  Hence, Prospect must attack the credibility of the former ESA officers.  One way to do this is to prove that the poisonous accusations against Prospect originated with one or more disgruntled employees, officers or directors of Prospect, and therefore were known to be and are tainted, inaccurate and biased.

The dilemma is how to build the bias case.  The Prospect mole appeared exclusively on Yahoo.  Prospect needed to act quickly because internet service providers typically only retain user information for 90 days.  Hence, if Prospect followed a rabbit trail which turned out to be a dead end and then wanted to serve Yahoo or another internet service provider a subpoena, the information may disappear before the subpoena is issued.  Prospect's private investigator asked to

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                    CASE NO. 08-MC-80115-SI

1  interview all the former officers and directors of ESA.  All refused an interview.  (Dec.¶ 34)  Also,

2  given their past fraudulent conduct and self interest, statements from the former ESA officers would

3  probably not be reliable.

4    The only avenue which appeared open to Prospect was to serve a subpoena on Yahoo to

5  obtain the identities of the Yahoo users.  Prospect could then see if any Prospect insiders were listed

6  among the users, and ask them, probably under oath, if they had any communications with the

7  former officers of ESA.

8    On April 16, 2008, Prospect issued a subpoena on Yahoo.  (Ex. X)  Yahoo notified the users

9  of the subpoena.   Counsel for Free3warren appeared and objected to the subpoena.   (Ex. G)

10  Counsel claimed Free3warren was nothing more than an interested investor exchanging solely

11  public information about Prospect and his opinions thereon.  (Ex. G)  Counsel claimed Free3warren

12  only analyzes public information and offers opinion on that public information.  (Ex. G)  Counsel

13  further claimed that Free3warren only operated under the username Free3warren. Free3warren's

14  counsel proposed a settlement by which Free3warren would sign an affidavit (with name redacted)

15  on all these points.  (Ex. G)

16    Prospect agreed to the proposal of Free3warren with some modifications.  (Ex. H)  Prospect

17  wanted Free3warren to represent that he was not a current or former employee, officer or director of

18  Prospect, and agree to have his identity verified by an independent third party.  (Ex. H)

19    Free3warren's counsel refused these proposed changes and filed a motion to quash the

20  subpoena in the Northern District of California.  The reason Free3warren refused to deny that he is

21  a former employee, officer or director of Prospect is obvious.  He is one.  Why else would

22  Free3warren choose an expensive motion to quash over a simple denial?  Free3warren is at least

23  one of the moles Prospect needs to uncover to prove Prospect's bias theory and the claim of

24  transmitting internal Prospect documents and information to the Yahoo message board, inflicting

25  great harm on Prospect.

26    On May 22, 2008, Prospect issued a second subpoena to Yahoo to discover the identify of

27  other Yahoo users who posted messages about ESA.  (Ex. Y)  After Yahoo notified the new users

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                    CASE NO. 08-MC-80115-SI

1    by email dated May 29, 2008, Free3warren's counsel confessed to Prospect's counsel that contrary

2    to her prior representations, Free3warren had posted other messages on the Yahoo finance site

3    under the user name "Wiseone718." (Ex. EE)  Counsel claimed Free3warren would not use this

4    additional user name in the future. (Ex. EE)  Counsel also denied that Free3warren was using the

5    similar name "Wiseone7181" on Yahoo. (Ex. EE)

6         Prospect reviewed the messages posted by Wiseone718 and Wiseone7181.  Wiseone718

7    posted messages on Yahoo which were an exchange of messages between Wiseone718 and

8    Free3warren.  (Ex. J)  This reveals that Free3warren was talking to himself on Yahoo about

9    Prospect using two different user names. (Ex. J)  This gives the false appearance of a conversation

10   among different users.  This is hardly the behavior of an innocent investor.  Furthermore,

11   Free3warren (as wiseone718) solicited posters for false sworn statements made by Prospect in Court

12   and invited anyone with that information to send it to Prospect's independent Board of Directors.

13   Free3warren (as free3warren) replied:

14         Well stated.  I wish I had thought to post this.

15   (Ex. J) This is a blatant attack on Prospect.  Free3warren wanted to stir up possible perjury charges

16   and a Board of Director investigation.

17        Free3warren's twisted behavior also raises the issue of how may other user names has

18   Free3warren adopted to have conversations with himself.  Is Free3warren also Wiseone7181?

19   Wiseone7181 has posted 811 times on the Prospect finance page with Yahoo.  Many of these

20   postings deal with ESA.  Is he ephfields?  fmrpsecemploee?  Nothing can be ruled out at this point.

21        Free3warren may be the Prospect insider who has been posting confidential and proprietary

22   information of Prospect on Yahoo.  Free3warren may have disclosed other confidential and

23   proprietary information to the former officers of ESA outside the Yahoo message board.

24   Free3warren may have instructed the former ESA officers on how to put pressure on Prospect both

25   on the Yahoo message board and with the Trustee and Bankruptcy Court.  Free3warren clearly has

26   an axe to grand with Prospect and Mr. Barry.  Free3warren is obsessed with harming Prospect and

27   Mr. Barry.  Any information transmitted by Free3warren to the former ESA officers and then to the

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                    CASE NO. 08-MC-80115-SI

Trustee or Bankruptcy Court is heavily biased and Prospect has the right to make the argument to the Trustee and the Bankruptcy Court that the accusations are biased.

### 6.    Cablevision Subpoena

Prospect decided to go on the offensive to ferret out the Prospect insiders who were trafficking in Prospect confidential and proprietary information. On March 13, 2008, an agent of Prospect posted a message on Yahoo under the alias "citykidd" which states:

> In addition to the Rabobank information that has already been posted, I think I can provide some further insight that you guys may find valuable. I prefer not to post it here as I don't want to draw the attention of lil' drawstring and her master. I will email it to a select group of you…"

(Ex. T) On March 14, 2008, at 11:50AM, citykidd posted another message on Yahoo:

> …I have already emailed a few of you at your Yahoo e-mails and I trust you will find what I sent you far more valuable than a loan breakdown…

(Ex. T) Three minutes later, to obtain this inside information, someone from IP address 69.120.35.31 clicked on citykidd's Yahoo email address to view the email and attachment from citykidd. This click relayed the IP address to Prospect's agent.

On June 13, 2008, Prospect issued a subpoena on Cablevision to disclose John Doe's identity based on John Doe's IP address. (Ex. FF) At the time Prospect issued the subpoena, Prospect thought it was possible that Free3warren was John Doe, but had no proof. Prospect only knew the IP address for John Doe. On June 23, 2008, counsel for John Doe called counsel for Prospect and posed a number of questions about the subpoena. (Ex. FF) Prospect's counsel offered a quick and inexpensive way to dispose of the subpoena without the disclosure of John Doe's identity. John Doe simply had to disavow any personal connection to Prospect or ESA. (Ex. FF)

Instead of any disavowal, on July 1, 2008, John Doe filed a motion to quash Prospect's subpoena ("Doe Motion") in the District Court for the Eastern District of New York under the caption *In re Rule 45 subpoena issued to Cablevision Systems Corporation regarding IP Address 69.120.35.31*, Misc. 08-347 ("New York Action") (Ex. FF). At no time prior to the filing of the

- 14 -

1   Doe Motion did John Doe's New York counsel state that John Doe was Free3warren.  (Ex.. FF)

2   After Prospect filed its opposition papers in the New York Action, John Doe admitted in his reply

3   papers for the first time that John Doe is Free3warren.  (Ex. II)  John Doe refused to deny, however,

4   that he is a current or former Prospect insider.  (Ex. II)

5       John Doe's reply in New York is a blockbuster revelation by Free3warren, and yet another

6   glimpse at Free3warren's web of deceit.  There is now proof that Free3warren has used three aliases

7   — Free3warren, wiseone718 and activinvst.  (Ex. Z) (activinvst uses same IP Address as John Doe)

8   (Ex. L)  When he registered as activinvst with Yahoo, Free3warren informed Yahoo that his actual

9   name was Tom Poston of Greenwich, Connecticut.  (Ex Z) There is no such person listed in

10  Greenwich at the address provided by "Tom Poston."  (Dec.)  Hence, John Doe provided false

11  subscriber information to Yahoo.  John Doe did this because he knew he was up to no good.

12      The list of Free3warren's deceptive acts continues to grow, and now includes the following:

13          (i)    using at least three user names on Yahoo to give the false appearance of

14  multiple users (Free3warren, wiseone718 and activinvst) attacking Prospect on ESA and

15  other issues;

16          (ii)   using multiple user names on Yahoo to give the false appearance of a

17  dialogue requesting an investigation by Prospect's Board of Directors of Mr. Barry and

18  Prospect management;

19          (iii)  an attempt (as John Doe) to traffic in insider information;

20          (iv)   providing false subscriber information to Yahoo for the user name

21  "activinvst" and then falsely swearing in the New York Action to have never posted under

22  that name even though the postings came from Free3warren's IP Address;

23          (v)    initially lying to Prospect and this Court by claiming Free3warren was just an

24  innocent and interested investor using only public information in communications when in

25  fact Free3warren is a Prospect insider;

26          (vi)   initially lying to Prospect by claiming Free3warren never used any user name

27  other than Free3warren; and

28

- 15 -

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                    CASE NO. 08-MC-80115-SI

1         (vii)  initially failing to disclose in the New York Action that  John Doe is

2  Free3warren.

3         Free3warren is likely putting up a vigorous defense because he knows he had breached

4  fiduciary duties to Prospect.  Free3warren may also have violated SEC rules.  The SEC announced

5  that it is closely examining hedge funds to make sure no person is intentionally attempting to

6  manipulate hedge fund stock prices.  (Ex. JJ).  Free3warren may be attempting to manipulate

7  Prospect's stock price.  In one post on Yahoo, he writes:

8         Come on drawstring.  You're smarter than that!

9         The idea is not to short a thinly traded micro-cap like PSEC.  What
10         we're trying to do is scare the crap out of enough of the individual
          holders so they'll sell it down and we can buy it cheap!

11         If you look at the volatility over the last 6 months, it seems the plan
12         works best every time PSEC announces another problem loan!  The
          stock collapsed after ESA, AOG and then CIE.  You gotta love the
13         price action!

14  (Exhibit D to Rajagopal -Durbin Declaration dated May 22, 2008, 1/2/08 post).

15         Free3warren even brags about manipulating Prospect's stock and claims to be all the Yahoo

16  users who are criticizing Prospect.  He writes in a post on December 28, 2007 at 3:09 p.m.:

17         Hey man I already confessed once and said how smart you were to
18         have figured this whole scheme out.

19         I am free3warren, wiseone, seriousone, ephfields, icsemployee,
          fmrpsecemp, shelper67, and retired athlete, and anyone else I forgot
20         who criticizes PsEC on this board.

21         Do you have any idea how much money I've made manipulating this
22         stock? If the SEC wasn't so busy investigating guys who screwed up
          the mortgage market, my butt would be in big trouble. Oh well, so far
23         I've gotten away with it, and I've taken enough money from smart
          guys like you, that even if I get a call from the enforcement division, I
24         can afford to hire an ex-director of enforcement of the SEC to get me
          off.
25
          God this has been fun. Trashing John Barry and making money at the
26         same time. Oh by the way, in my spare time I'm also known as Santa
          Claus, Father Time, the Easter Bunny, Uncle Sam, Spider Man, the
27         Silver Surfer and…well, I'm sure a smart guy like you knows this
28         already.

- 16 -

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                    CASE NO. 08-MC-80115-SI

1

>By the way, love your burp…belch…yawn…style. There. Someone
>paid attention to you today, so I hope you feel better now.

2      Prospect needs to speak to Free3warren.  Prospect needs to know whether Free3warren, as a

3 current or former employee, officer or director of Prospect, has disclosed confidential and

4 proprietary information to the former officers of ESA to use against Prospect in the Bankruptcy

5 Case.  Prospect needs a chance to piece together its bias argument so that it can protect millions of

6 dollars in litigation claims on behalf of the ESA Trustee and all ESA creditors.

7 ### III.    ARGUMENT

8 ### A.    FREE3WARREN lacks standing to quash the subpoena

9      "In the absence of a claim of privilege, a party usually does not have standing to object to a

10 subpoena directed to a non-party witness."  *Langford v. Chrysler Motor Co.*, 513 F.2d 1121, 1126

11 (2d Cir.1975); *also In re Grand Jury Subpoenas*, 926 F.2d 847, 852 (9th Cir. 1990).  The only

12 exception to this rule is when Fourth of Fifth Amendment rights are at issue.  *U.S. v. Miller*, 425

13 U.S. 435, 443, 96 S.Ct. 1619, 48 C.Ed.2d 71 (1976); *ADL, LLC v. Tirakian*, 2007 WL 1834517

14 (E.D.N.Y.), p.2; *also Rouson v. Eicoff*, 2006 WL 2927161 (E.D.N.Y.) at p.7; *U.S. v. Crea*, 853

15 F.Supp. 72, n.1 (E.D.N.Y. 2004) (absent an infringement of Fourth or Fifth Amendment rights, the

16 motion to quash a subpoena on a third-party must be denied).  As stated by one Court:

17
18
19
20
21
22

>Where a defendant's Fourth Amendment interests are not implicated,
>courts apply "the general rule that the issuance of a subpoena to a
>third party to obtain the records of that party does not violate the
>rights of a defendant, even if a criminal prosecution is contemplated
>at the time the subpoena is issued." *Miller*, 425 U.S. at 444 (citations
>omitted).  In other words, if a defendant lacks a reasonable
>expectation of privacy in regard to evidence obtained from a third
>party, the defendant does not have standing to invoke the exclusionary
>rule…

23 *US v. Qingli*, 2008 WL 789899 (S.D.Cal.).

24      *Matrixx Initiatives, Inc. v. Doe*, 138 Cal. App.4th 872, 42 Cal.Rptr.3d (2006) is directly on

25 point.  There, a pharmaceutical company commenced a defamation suit and sought discovery from

26 third parties to identify anonymous entities who had posted critical statements about the

27 pharmaceutical company on Internet message boards.  The entities' anonymous posters opposed the

28 discovery requests by claiming their First Amendment rights would be violated if their identities

- 17 -

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                CASE NO. 08-MC-80115-SI

1   were revealed.  The Court held that because the discovery request was made on someone other than

2   the anonymous posters, the anonymous posters had no standing to oppose the discovery request.

3          Here, Prospect served a subpoena on Yahoo, not Free3warren.  Prospect seeks the

4   production of Yahoo's records, not Free3warren's.  Hence, Free3warren has no standing to quash

5   the Yahoo subpoena.

6          There are no privacy rights at issue.  A computer user does not have a legitimate expectation

7   of privacy in his subscriber information which is conveyed to an internet service provider.  *US v.*

8   *Forrester*, 512 F.3d 500 (9th Cir. 2008 (computer user had no Fourth Amendment right to privacy

9   concerning e-mails and IP addresses of websites visited); *U.S. v. Perrine*, 518 F.3d 1196, 1204

10  (10th Cir. 2008) ("Every federal court to address this issue has held that subscriber information

11  provided to an internet provider is not protected by the Fourth Amendment's privacy expectation");

12  *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("Computer users do not have a legitimate

13  expectation of privacy in their subscriber information because they have conveyed it to another

14  person - the system operator"); *U.S. v. D'Andrea*, 497 F.Supp.2d 117, 120 (D.Mass. 2007)

15  ("…internet users have no reasonable expectation of privacy in their subscriber information, the

16  length of their stored files, and other noncontent data to which service providers must have access").

17  Prospect is not seeking any content data here.

18         Free3warren cannot obtain standing based on any privacy interest.  Yahoo's user terms and

19  conditions also make it clear that Free3warren's subscriber information may be disclosed to third-

20  parties.  (Ex. W)  ("You acknowledge, consent and agree that Yahoo! may access, preserve and

21  disclose your account information and Content if required to do so by law or in a good faith belief

22  that such access, preservation or disclosure is reasonably necessary to:   (a) comply with legal

23  process… (c) respond to claims that any Content violates the rights of third parties… or (e) protect

24  the rights, property or personal safety of Yahoo!, its users and the public).

25         **B.      The Balance of Harms Weighs Heavily in Favor of Disclosure**

26         A subpoena will be quashed if it "requires disclosure of privileged or other protected

27  matter and no exception or waiver applies."  Fed.R.Civ.P 45 (c)(3)(A)(iii).  "The party requesting

28

- 18 -

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                CASE NO. 08-MC-80115-SI

1  that the subpoena be quashed must show good cause for protection by specifically demonstrating

2  that disclosure will cause a clearly defined and serious harm." *London-Sire Records, Inc. v. Doel*,

3  542 F.Supp.2d 153, 163 (D.Mass. 2008).  "The Court balances the harm of disclosure against the

4  harm to the other party of restricting discovery." *Id.*

5        "Courts evaluating requests to identify information from ISPs regarding subscribers

6  have considered a variety of factors to weigh the need for disclosure against First Amendment

7  interests."  *General Bd. of Global Ministries of the United Methodist Church v. Cablevision*

8  *Lightpath, Inc.*, 2006 WL 3479332 (E.D.N.Y.).  "These factors include:  (1) a concrete showing of a

9  *prima facie* claim of actionable harm, (2) specificity of the discovery request, (3) the absence of

10  alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed

11  information to advance the claim, and (5) the party's expectation of privacy."  *Id.* (citing *Sony*

12  *Music Entm't Inc.*, 326 F.Supp.2d at 564-65).  *also Highfields Capital Management L.P. v. Doe*,

13  385 F.Supp.2d 969 (N.D.Cal. 2005).

14        In this balancing test, it is important to remember that while the First Amendment

15  protects anonymous speech, especially anonymous <u>political</u> speech, (*Buckley v. American*

16  *Constitutional Law Found.*, 525 U.S. 182, 200, 119 S.Ct. 636 (1999)), "[a]nonymous speech, like

17  speech from identifiable sources, does not have absolute protection."  *Sony Music Entertainment*

18  *Inc. v. Does 1-40*, 326 F.Supp.2d 556, 562-63 (S.D.N.Y. 2004).  For example, an anonymous

19  speaker has no First Amendment right to engage in obscenity, *Roth v. United States*, 354 U.S. 476,

20  483, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), libel, *Beauharndis v. Illinois*, 343 U.S. 250, 266, 77

21  S.Ct. 725, 96 L.Ed. 919 (1952), copyright infringement, *Harper & Row Publishers, Inc. v. Nation*

22  *Enters.*, 471 U.S. 539, 555-56, 105 S.Ct. 2218, 85 L.Ed. 2d 588 (1985), misleading or commercial

23  speech, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of NY*, 447 U.S. 557, 563-64, 100

24  S.Ct. 2343, 75 L.Ed. 351 (1980), or use of "fighting words," *Chaplinsky v. New Hampshire*, 315

25  U.S. 568, 573, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

26        The distinction between commercial and non-commercial speech is significant.

27  *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F.Supp.2d 514, 524 (S.D.N.Y. 2001) ("[T]he

28

- 19 -

1  level of First Amendment protection afforded a party 'depends on whether the activity sought to be

2  regulated constitutes commercial or noncommercial speech.'") (quoting *Bolger v. Youngs Dry*

3  *Prods., Corp.* 463 U.S. 60, 65, 103 S.Ct. 2875, 77 C.Ed. 469 (1983)).  "Commercial speech is

4  afforded a lesser degree of protection than other constitutionally safeguarded forms of expression,

5  such as political speech."  *Gorran v. Atkins Nutritionals, Inc.*, 464 F.Supp.2d 315, 326 (S.D.N.Y.

6  2006).  "Commercial speech that is false or misleading is afforded no First Amendment protection

7  at all."  *Id.*; *also Goldberg v. Cablevision Sys.Corp.*, 261 F.3d 318, 327 (2d Cit. 2001) (citing *Cent.*

8  *Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 566, 1000 S.Ct.

9  2343, 65 L.Ed.2d 341 (1980).  Here, we know that the poster used multiple aliases to mislead.  "In

10  determining whether speech is commercial, the Court considers three factors:  (1) whether the

11  communication is an advertisement, (2) whether the communication refers to a specific product or

12  service, and (3) whether the speaker has an economic motivation for the speech."  *Gorran*, 464

13  F.Supp.2d at 326.

14     Free3warren is clearly an insider.  Free3warren shows an incredible knowledge of

15  the inner workings of Prospect in his postings.  He could avoid expensive litigation by simply

16  denying he is a Prospect insider, and his refusal to do so confirms he is an insider.

17     Free3warren is clearly an insider up to no good.  His 506 postings in little over a year

18  show he is obsessed with attacking Prospect and Mr. Barry.  Free3warren uses multiple aliases and

19  tries to cover his tracks at every turn.  He has attempted to traffic in insider information and has

20  encouraged others to do so.  He may have adopted other user names such as wiseone7181 (who has

21  posted over 800 messages on Yahoo, many of which deal with ESA).

22     Because Free3warren is an insider and up to no good, Prospect has reasonably

23  concluded that Free3warren is the prime mole suspect who has breached his fiduciary duties to

24  Prospect.  As discussed at length above, Prospect, the ESA Trustee and other ESA creditors may

25  lose millions of dollars in litigation claims if Prospect is deprived of the ability to prove that the

26  false and defamatory accusations against Prospect were fed to ESA officers by one or more

27  disgruntled employees, officers or directors of Prospect.  Prospect has the right to prove that the

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA        CASE NO. 08-MC-80115-SI

—

1   information is tainted by bias. Prospect should not be forced to deal with the Trustee and the Court

2   with one arm tied behind its back. Moreover, Prospect should be allowed to find out if the mole is

3   still within Prospect, and possibly working on the ESA matter, or has access to confidential and

4   privileged information relating to Prospect's litigation strategies in the ESA litigation.

5           Free3warren's potential harm, on the other hand, is that his First Amendment rights

6   could possibly be violated. However, these rights are razor thin to begin with because the speech at

7   issue here is commercial speech. Free3warren's false and misleading speech (such as creating the

8   false appearance of multiple users conversing on Yahoo when in fact it was only Free3warren

9   talking to himself on line) is entitled to no First Amendment protection. Free3warren's act of

10  clicking on a link to obtain insider and proprietary information for his own use and the use of others

11  receives no protection under the First Amendment. An attempt to traffic in insider information is

12  not protected speech. Free3warren's possible efforts to manipulate Prospect's stock price also

13  receive no First Amendment protection. Moreover, Free3warren does not even have an expectation

14  of privacy in subscriber information. (See point III(A) *supra*). Finally, if Yahoo does not respond

15  to the subpoena, the subscriber information and evidence of possible civil and criminal wrongs can

16  soon be lost under Yahoo's retention policy. The mole could escape detection. The balance of

17  harms weighs decidedly in favor of Prospect.

18          **C.    Free3warren's motion for legal fees should be denied**

19          Prospect has taken responsible steps to avoid imposing undue burden or expense on John

20  Doe as required under Federal Rule of Civil Procedure 45(c)(1). Prospect in fact offered an

21  inexpensive way to resolve the subpoena short of a motion to quash. (Kounce Dec. Ex. D)

22  Prospect asked Free3warren to confirm he is not a former employee, officer or director of ESA.

23  Free3warren refused this inexpensive path, and chose expensive litigation instead.

24          Free3warren has a lot of nerve to accuse Prospect of wrongdoing. Prospect is trying

25  to protect its interests as the interest of the Trustee and all other creditors in the ESA bankruptcy.

26  Prospect never generated a computer virus to attack Free3warren, and opposing counsel certainly

27  has failed to introduce any evidentiary basis to back up that accusation. Prospect never tried to get a

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                          CASE NO. 08-MC-80115-SI

1  second bite at the apple by serving a subpoena on Cablevision.   When Prospect issued the

2  Cablevision subpoena it only had an IP address.   Prospect could not know with certainty that

3  Free3warren used that IP Address.   Prospect never abandoned the California action.   On July 9

4  Prospect specifically advised opposing counsel that Prospect intended to oppose the motion to

5  quash in California.

6          Free3warren, as an insider, acting with malice, breaching fiduciary duties, possibly

7  violating SEC laws to manipulate stock prices, misrepresenting to this Court that he is just an

8  "innocent investor communicating with publicly available information" is the one acting in bad

9  faith here.

10  **IV.     CONCLUSION**

11         Based on the foregoing, Prospect respectfully requests that the Motion be denied, and that

12  the Court award other and further relief.

13

14  DATED:  July 17, 2008                          BUCHANAN INGERSOLL & ROONEY LLP

15

16                                                 s/Cyril J. Dantchev
                                                   By:     CYRIL J. DANTCHEV
17                                                         Attorneys for Respondent
                                                           PROSPECT CAPITAL CORPORATION

18

19

20

21

22

23

24

25

26

27

28

PROSPECT CAPITAL'S MEMO IN OPPOSITION TO
MOTION TO QUASH SUBPOENA                                CASE NO. 08-MC-80115-SI